1  MCKOOL SMITH HENNIGAN, P.C.
   RODERICK G. DORMAN (SBN 96908)
2  rdorman@mckoolsmithhennigan.com
   LAWRENCE M. HADLEY (SBN 157728)
3  lhadley@mckoolsmithhennigan.com
   865 South Figueroa Street, Suite 2900
4  Los Angeles, California 90017
   (213) 694-1200 - Telephone
5  (213) 694-1234 – Facsimile

6  Attorneys for Plaintiff CompuFill, LLC

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11 COMPUFILL, LLC                    ) Case No. 3:11-cv-01114-CAB-BGS
                                     )
12            Plaintiff,             )
                                     ) **PLAINTIFF COMPUFILL, INC.'S REPLY**
13 vs.                               ) **CLAIM CONSTRUCTION BRIEF:**
                                     ) **U.S. PATENT NO. 6,728,684**
14 WALGREEN CO.; CVS PHARMACY, INC., )
   WAL-MART STORES, INC.; TARGET     ) Date: April 3, 2012
15 CORPORATION; COSTCO WHOLESALE     ) Time: 11:45 a.m.
   CORPORATION                       ) Location: Courtroom 2
16                                   ) Judge: Hon. Cathy Ann Bencivengo
              Defendants.            )
17                                   )
                                     )
18                                   )
                                     )
19 _____ )

CASE NO. 3:11-CV-01114-CAB-BGS                    **Reply Claim Construction Brief**
iManage\1792192.1

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ - 1 -

II. DEFENDANTS' PRPOSED CLAIM CONSTRUCTIONS SHOULD BE REJECTED .............................................................................. - 2 -

    A. "Storing" Includes Temporary Storage in RAM Memory for Retransmission in the Event of Momentary Interruptions in the Communications Link ............................................. - 2 -

        1. CompuFill's Reexamination Request Makes Clear that no Prior Art Mandates Defendants' Narrow Construction ................................................................................... - 3 -

        2. Defendants' Proposed Construction of the "Storing" Limitation Reads the On-Line Communications Embodiment Out of the Claims ..................................................... - 4 -

        3. Neither The Claims Nor The Specification Exclude Any Particular Computer Storage Hardware ................... - 6 -

    B. "Establishing a Communications Link" Limitation is not Limited to Particular Communications Links ........................... - 7 -

    C. When Communications Between Said Client Computer And Said Host Computer Are On-Line ...................................... - 8 -

    D. The "Client Computer Storage Means" Phrase Is Not Subject To Construction Under 35 U.S.C. § 112(6) ................. - 9 -

III. CONCLUSION .................................................................................................. - 10 -

## TABLE OF AUTHORITIES

Page

**Cases**

*Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*,
  34 F.3d 1048 (Fed. Cir. 1994) .................................................................... - 6 -

*Embrex, Inc., v. Serv. Eng'g Corp.*,
  216 F.3d 1343 (Fed. Cir. 2000) ................................................................... - 8 -

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
  91 F.3d 1580 (Fed. Cir. 1996) ..................................................................... - 9 -

*Masco Corp. v. United States*,
  303 F.3d 1316 (Fed. Cir. 2002) .................................................................. - 10 -

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007) ................................................................... - 5 -

*O.I. Corp. v. Tekmar Co.*,
  115 F.3d 1576 (Fed. Cir. 1997) .................................................................. - 10 -

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ................................................................... - 6 -

*Personalized Media Communs., L.L.C. v. ITC*,
  161 F.3d 696 (Fed. Cir. 1998) ..................................................................... - 9 -

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ........................................................... - 6 -, - 7 -

*Rodime PLC v. Seagate Tech., Inc.*,
  174 F.3d 1294 (Fed. Cir. 1999) ................................................................... - 9 -

*Sage Prods. Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ................................................................... - 9 -

*Source Search Techs., LLC v. Lending Tree, LLC*, 2006 U.S. Dist. LEXIS 79651 *55-
  56 (D.N.J. Oct. 16, 2006), *vacated-in-part, affirmed-in-part, and remanded on
  other grounds*, 588 F.3d 1063 (Fed. Cir. 2009) .......................................... - 9 -

*Stambler v. Merrill Lynch & Co.*,
  2010 U.S. Dist. LEXIS 100657 at *24 (E.D. Tex. Sept. 24, 2010) ............. - 9 -

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
  239 F.3d 1225 (Fed. Cir. 2007) ................................................................... - 6 -

## TABLE OF AUTHORITIES (Cont.)

Page

**Statutes**

35 U.S.C. § 112(6) ................................................................- 2 -, - 9 -, - 10 -

## I. INTRODUCTION

Defendants' claim construction positions highlight the central dispute between the parties: According to Defendants, the "storage" limitation should be construed to exclude the "temporary" storage of prescription refill information during momentary disruptions of the communications link between the client and host computers. CompuFill's proposed construction, on the other hand, is broad enough to encompass the "temporary" storage of prescription refill information during momentary disruptions of the communications link between the client and host computers. Both legal claim construction rules and the intrinsic patent documents support CompuFill's proposed construction.

Defendants' proposed construction of the "storing" limitation, if adopted, would read out of the claims the entire "on-line communications" embodiment (which defendants ignore). It would further lead to the absurd result that temporary random access memory ("RAM") is not storage. To persons skilled in the art, RAM storage is storage in computer systems under any conceivable definition of "storing." Defendants point to nothing the specification or file history excludes or disclaims RAM storage from satisfying the "storing" limitation. Rather, Defendants argue that the ordinary meaning of storage would render the patent invalid. But Defendants validity arguments (1) are irrelevant in construing the claims, and (2) were rejected by the Patent Office in denying CompuFill's request for reexamination.

Defendants suggest that the denial of the reexamination by the Patent Office has no relevance because CompuFill did not disclose the significance of the prior art submitted. Defendants are wrong. In seeking reexamination, CompuFill expressly provided to the Patent Office the prior art communications protocol that provides for the temporary storage of information for the retransmission of information in the event of momentary interruptions in the communication link, and explained that the "storing limitation" in the claims make use of that communications protocol. Despite this disclosure, the Patent Office found no substantial question of patentability, citing differences other than "temporary storage" between the claims of the '684 Patent and the prior art submitted to the Patent Office.

CompuFill's proposed claim constructions for the "establishing" and "on-line" phrases follow from its proposed construction of the "storing" limitation. In contrast, Defendants' proposed constructions of these phrases would improperly read in limitations from the specification and substitute one technical term with another.

Finally, Defendants argue that three claims using the term "client computer storage means" require construction under 35 U.S.C. § 112(6). Defendants are incorrect for the reasons stated in CompuFill's opening claim construction brief. Defendants are further incorrect for a separate reason: The claims that use the phrase "client computer storing means" are all method claims. While section 112(6) applies to method claims, the term "means" is only used for apparatus claims and relates to some structure. For a method claim to fall within section 112(6), it must be written in the form of a "step for" performing some "act." Since the phrase "client computer storing means" is in method, not an apparatus claims, the term necessarily is used as a noun, not as a "means" structure subject to section 112(6).

## II. DEFENDANTS' PRPOSED CLAIM CONSTRUCTIONS SHOULD BE REJECTED

### A. "Storing" Includes Temporary Storage in RAM Memory for Retransmission in the Event of Momentary Interruptions in the Communications Link

The crux of Defendants' request that this Court re-write the straightforward "storing" limitation in claims 1 and 8 into an entire paragraph, which includes a negative limitation longer than the storing limitation itself, is designed to exclude from the claims the temporary storage of prescription refill information in RAM storage of the client computer for retransmission to the host computer in the event of momentary interruptions in the communications link. Defendants' effort to so limit the claims suffers from three fundamental defects. First, in seeking reexamination, CompuFill fully disclosed the prior art standard for the temporary storage of computer information for retransmission in the event of momentary interruptions in the communications link; the Patent Office accepted this reading of the claims, and yet still found no substantial question of patentability. Second, one of the two embodiments of the invention disclosed in the specification expressly discloses and describes the process for the temporary

storage of computer information for retransmission in the event of momentary interruptions in the communications link. Third, neither the claims nor the specification exclude any particular computer storage hardware (such as RAM) from fulfilling the "storing" limitation, or require that the information be stored in any particular format.

### 1. CompuFill's Reexamination Request Makes Clear that no Prior Art Mandates Defendants' Narrow Construction

According to Defendants, the specification discloses "prior art systems" that "necessarily would have involved the temporary holding within the computer of prescription request data during the conducting of online processing." (Mot. at 2 (citing 4:27-32).) Based on the assumed functionality of these "prior art systems," Defendants contend that the claims of the '684 patent must be construed narrowly to exclude temporary storage of prescription refill information for retransmission when momentary interruptions in the communication link between client and host computers occur. Otherwise, the patent would be invalid.

Defendants' validity argument not only lacks relevance to claim construction, it directly conflicts with the recent Patent Office decision to deny CompuFill's reexamination request, finding no substantial issues of patentability. In seeking reexamination, CompuFill submitted the very protocol that describes temporary storage to accommodate momentary interruptions in communications.[1] After reviewing the TCP Protocol, the Patent Office accepted that the claims of the '684 Patent were broad enough to cover the temporary storage of prescription refill information for resending in the event that on-line Internet communications between a client and host were momentarily interrupted. The Patent Office further accepted that the TCP Protocol disclosed such temporary storage and recovery.[2] Nonetheless, the Patent Office disagreed with the central premise that Defendants now advance: That prior art renders the claims of the '684

---

[1] RFC 793 Transmission Control Protocol Specification, dated September 1981 ("TCP Protocol"), attached as Ex. 2 to Hadley Decl., in Support of CompuFill's Opening Claim Construction Brief.

[2] Hadley Decl., in Support of CompuFill's Opening Claim Construction Brief, Ex. 3 at 7-8.

patent invalid if the "storing" limitation in the claims are read broadly enough to encompasses the temporary storage of prescription refill information for resending in the event that on-line Internet communications between client and host computers are momentarily interrupted (as described in the TCP Protocol). Indeed, in denying the reexamination request, the Patent Office did not even find that Defendants' theory raises a substantial question of patentability.

Defendants only response is to imply that CompuFill pulled a "fast one" on the Patent Office by withholding claim constructions and misrepresenting the art. (Mot. at 11.). The record demonstrates otherwise. CompuFill disclosed the entirety of the TCP Protocol to the Patent Office. CompuFill further provided a summary of the TCP Protocol. It then provided thirteen separate claim charts to the Patent Office in which it mapped the TCP Protocol to the "storing" limitation in the independent claims. To remove any doubt as to whether CompuFill withheld anything from the Patent Office or made any misrepresentation to the Patent Office in connection with the reexamination request, CompuFill provides the complete filing with this Reply brief.[3]

### 2. Defendants' Proposed Construction of the "Storing" Limitation Reads the On-Line Communications Embodiment Out of the Claims

Defendants ask this Court to exclude from the "storing" limitation "maintaining the request within the client computer during the period that the request is processed through interactive communications between the client computer and the host computer...." (Def. Br. at 7.) As Defendants explain, this "negative limitation" would exclude from the scope of the claims temporary storage of prescription refill information to allow for retransmission when momentary delays occur in the communications link. (*Id.* at 1-2, 10-11.) Defendants justify this exclusion because the specification only shows "storing" of prescription refill information when there is "offline communications processing," but not when there is "online communications processing." (*Id.* at 8-10.) Defendants are wrong, and their proposed exclusion, if adopted, would erroneously limit the claims to only one of the two embodiments shown in the

---

[3] Second Hadley Decl., Ex. 1.

specification. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) (a claim construction "that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").

Defendants' argument entirely ignores the "on-line communications" embodiment, described at 6:10-7:15, and misread the figures. In the "on-line communications" embodiment, the verification transaction checks for temporary delays in the communications link by an exchange of "initiator" messages. (3:56-67.) If the verification process detects a momentary disablement in the communications link, then "off-line communication processing" is initiated so that stored prescription refill information can be passed from the client to the host computer once a subsequent verification process confirms that he communications link has been reestablished. (6:29-45; Figs. 3b and 7a.) Defendants neither cite nor discuss this embodiment in their opening claim construction brief.

Rather than consider the "on-line communications" embodiment, Defendants point to Figure 8, which describes "capture" and "store" steps that are not shown in the figures corresponding "on-line communications" processing flow chart in Figure 3b. (Def. Br. at 9-10.) But Figure 8 describes the "off-line communications" embodiment, shown in the Figure 2 flow chart and described at 5:15-6:6. In the off-line communications embodiment, the "host off command" is activated, signaling a potentially longer inability to send refill information from the client to the host due to hardware issues. (*Id.*; 3:67-4:5.) As explained, interactive communications between the host and the client computer are presumptively unavailable in this embodiment. (4:66-7:56.) Accordingly, the client computer accepts and stores caller prescription refill information for future processing to give the "outward seemless appearance to the patient that the refill system is fully operational." (5:46-48.)

Defendants also argue that the specification never uses the word "temporarily" in referring to unavailability of the communications link. (Defs. Br. at 1-2, 10-11.) While the specification does not say that the communications link may be "temporarily" unavailable, it twice refers to the communications link being "not available" at the "moment" a verification

transaction occurs. (6:39-44; 9:29-30.) Thus, the patent expressly contemplates storing prescription refill information to accommodate momentary periods when the communications link may be unavailable, even (as Defendants' negative limitation states) while the request is "processed though interactive communications between the client computer and the host computer...."[4]

### 3. Neither The Claims Nor The Specification Exclude Any Particular Computer Storage Hardware

Defendants cite six passages from the specification in which prescription refill information is stored in "data storage" or on a "local database." (Defs. Br. at 7-8.) These passages simply describe an exemplary storage location. They say nothing expressly or implicitly that limits the invention to a particular storage location. Nor do the claims; all claims recite only the term "storing," and the claims all issued without a limitation as to where the "storing" must occur. If this Court were to now read into the claims such a limitation as part of claim construction, it would violate a well-established claim construction tenant against doing so. *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1237 (Fed. Cir. 2007) ("[I]t is improper to read limitations from the written description into the claim"); *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("[C]laims are not to be interpreted by adding limitations appearing only in the specification."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.) (citations omitted).

Moreover, while Defendants' expressed intent in limiting "storage" to a "local database" is to exclude RAM storage from the scope of "storage," (Defs. Br. at 10), it is not clear that

---

[4] In any event, negative limitations in claim construction are disfavored. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("Our independent review of the patent document reveals . . . there is no basis in the patent specification for adding the negative limitation." (citations omitted)).

adding in a "local database" limitation would accomplish Defendants' intended result. To the contrary, RAM can and does store information in databases. Research in main-memory database systems started around 1993 at Bell Labs. It was prototyped as the Dali Main-Memory Storage Manager. This research resulted in the first commercial main-memory database for random access volatile memory, known as MMDB. See http://en.wikipedia.org/wiki/In-memory_database. Thus, even when prescription refill information is stored in RAM, it may be stored in database form.

### B. "Establishing a Communications Link" Limitation is not Limited to Particular Communications Links

In support of their construction of the "establishing a communications link" limitation, Defendants assert that the specification "provides specific examples" of different communications links. (Defs. Br. at 12.) It does; but that does not justify reading those "specific examples" into the claims. Neither the claim language nor the specification limits the invention to particular types of communication links. Thus, limiting the claim language to serial and LAN connections would violate the rule against reading limitations from the specification into the claim language. *Phillips*, 415 F.3d at 1323.

Defendants' only criticism of CompuFill's proposed construction is that it is "circular" because it uses "communications link" in the definition. But the term "communications link" standing alone does not require an isolated definition. Rather, what would be useful to the jury is an instruction that defines when a communications link has been *established*. CompuFill's proposed construction defines in clear terms when a communication link is "established," and does so consistent with its proposed definition of the "storing" limitation. Defendants' proposed construction, on the other hand, says that a communication link is "established" when a client and host computer can "support interactive communications between the computers." Replacing the phrase "establishing a communications link" with "supporting interactive communications" is not likely to shed any more clarity than the claim language itself, and thus should not be adopted.

### C.  When Communications Between Said Client Computer And Said Host Computer Are On-Line

Defendants contend that their proposed construction of the "when communications . . . are on-line" phrase is supported by the specification. That is not the problem. Defendants' proposed construction simply substitutes "on-line communications" with "interactive communications" without providing a definition for "interactive communications." For a jury, the term "interactive communications" is not likely to be any clearer than "on-line communications." Because the purpose of claim construction is to elaborate "the normally terse claim language, in order to understand and explain, but not to change, the scope of the claims," *Embrex, Inc., v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (internal quotations and citation omitted), replacing one technical term with another defeats the purpose.

CompuFill's proposed construction, in contrast, elaborates on the meaning of "interactive communications" in a way that is consistent with the specification and understandable to a jury. It also follows directly from its proposed constructions of the "storing" and "establishing a communications link" limitations. CompuFill's proposed construction defines "on-line" communications as the ability to functionally communicate between the client and host computers. This construction is derived from the definitions of "on-line communications" and "interactive communications" contained in the specification. In the "on-line communications" embodiment, interactive communications exist when the host computer responds to an initiator message from the client computer, verifying that interactive communications have not been interrupted, even momentarily. (3:56-67; 4:10-13; 6:29-45.) In the "off-line communications" embodiment, interactive communications exist when any hardware status interruptions have been resolved. (3:67-4:9; 4:10-13; 5:16-45.) For both embodiments, the client and host computers functionally communicate to transfer prescription refill information. Thus, CompuFill's proposed construction will provide better guidance for the jury.

### D. The "Client Computer Storage Means" Phrase Is Not Subject To Construction Under 35 U.S.C. § 112(6)

Defendants contend that the claim phrases "first client computer storage means" and "a client computer storage means" as used in claims 1, 6, and 7 are governed by 35 U.S.C. § 112(6). They are not.

First, as explained in CompuFill's Opening Claim Construction Brief, these phrases are not governed by 35 U.S.C. § 112(6) because the phrases recite no function corresponding to the "storage" means. Even if these phrases recited a function of storing prescription refill request, the claims recite sufficient structure or material for performing that function – *i.e.*, a client computer. *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427 (Fed. Cir. 1997); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999). In short, the term "storage means" is a noun that describes a devices taking its name from the functions it performs. For this reason, under identical facts, courts in other jurisdictions have held that section 112(6) does not apply to the term "storage means." *Source Search Techs., LLC v. Lending Tree, LLC*, 2006 U.S. Dist. LEXIS 79651 *55-56 (D.N.J. Oct. 16, 2006), *vacated-in-part, affirmed-in-part, and remanded on other grounds*, 588 F.3d 1063 (Fed. Cir. 2009); *Stambler v. Merrill Lynch & Co.*, 2010 U.S. Dist. LEXIS 100657 at *24 (E.D. Tex. Sept. 24, 2010). *See also Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (holding that the words "detent mechanism" without a following functional clause did not invoke section 112(6)); *Personalized Media Communs., L.L.C. v. ITC*, 161 F.3d 696, 704 (Fed. Cir. 1998) (holding that the term "digital detector" without a following functional clause did not invoke section 112(6) because the term "convey[s] to one knowledgeable in the art of a variety of structures known as "detectors.").

Second, section 112(6) cannot apply to the "client computer storage means" phrase because that phrase is used only in method claims. While section 112(6) applies to method claims, the term "means" is only used for apparatus claims and relates to some structure. For a method claim to fall within section 112(6), it must be written in the form of a "step for" performing some "act":

> [Section 112(6)] refers to means and steps, which must be supported by structure, material, or acts. It does not state which goes with which. ***The word "means" clearly refers to the generic description of an apparatus element, and the implementation of such a concept is obviously by structure or material***. We interpret the term "steps" to refer to the generic description of elements of a process, and the term "acts" to refer to the implementation of such steps. This interpretation is consistent with the established correlation between means and structure. ***In this paragraph, structure and material go with means, acts go with steps***.

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1582-1583 (Fed. Cir. 1997) (emphasis added). *See also Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002) ("[I]n the context of method claims, the use of the term "steps for" signals the drafter's intent to invoke § 112, paragraph 6").

Here, the patentee's use of the phrase "client computer storage means" in only method claims raises no presumption that it be governed by 35 U.S.C. § 112(6). To the contrary, the use of the term "client computer storage means" in method claims presumptively refers to a noun – a thing in a computer that stores information. Defendants provide no authority for holding that the use of the term "means" in a method claim, as opposed to "steps for" some "act," can ever invoke section 112(6). Thus, this Court should decline to construe "client computer storage means" in the method claims at issue as a structure subject to section 112(6).

### III. CONCLUSION

For the foregoing reasons, CompuFill respectfully requests that the Court adopt CompuFill's proposed claim constructions.

DATED:   March 6, 2012            MCKOOL SMITH HENNIGAN, P.C.

By *s/Lawrence M. Hadley*
Attorney for Plaintiff
Email: lhadley@mckoolsmithhennigan.com

## CERTIFICATE OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 865 South Figueroa Street, Suite 2900, Los Angeles, California 90071. My electronic notification address is: *lhadley@mckoolsmithhennigan.com.*

On March 6, 2012, I served on all interested parties and/or their counsel(s) of record in said action the attached document(s) :

**COMPUFILL, INC.'S REPLY CLAIM CONSTRUCTION BRIEF: U.S. PATENT NO. 6,728,684**

by e-filing notification direct to the attorney(s) of records and/or the person or persons as stated below.

**Charles S. Barquist (cbarquist@mofo.com)**

**Wendy J. Ray (wray@mofo.com)**

I declare under penalty of perjury under the laws of the United States of America that I am a member of the bar of this Court and that the foregoing is true and correct.

Executed on March 6, 2012, at Los Angeles, California.

| Lawrence M. Hadley | /s/ Lawrence M. Hadley |
| :---: | :---: |
| (Type or print name) | (Signature) |

844760.01/LA