PTO/SB/57 (02-09)
Approved for use through 02/28/2013. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
P.O. Box 1450
Alexandria, VA  22313-1450

**Attorney Docket No.:** CMF.101

**Date:** November 9, 2011

1. ☒ This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number **6,728,684**
   issued April 27, 2004_____. The request is made by:
   ☒ patent owner.          ☐ third party requester.

2. ☒ The name and address of the person requesting reexamination is:

   CompuFill, Inc.

   225 South Lake Ave, Suite 300

   Pasadena, CA 91101

3. ☐ a. A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   ☐ b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
       to Deposit Account No. _____ ; or

   ☒ c. Payment by credit card. Form PTO-2038 is attached.

4. ☐ Any refund should be made by ☐ check or ☐ credit to Deposit Account No. _____
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. ☒ A copy of the patent to be reexamined having a double column format on one side of a separate paper is
   enclosed. 37 CFR 1.510(b)(4)

6. ☐ CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
       ☐ Landscape Table on CD

7. ☐ Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

       a. ☐ Computer Readable Form (CRF)
       b. Specification Sequence Listing on:
           i. ☐ CD-ROM (2 copies) or CD-R (2 copies); **or**
           ii. ☐ paper
       c. ☐ Statements verifying identity of above copies

8. ☐ A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. ☒ Reexamination of claim(s) 1, 2, 8, and 9_____ is requested.

10. ☒ A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
    Form PTO/SB/08, PTO-1449, or equivalent.

11. ☐ An English language translation of all necessary and pertinent non-English language patents and/or printed
    publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 18 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*


Exhibit ___ Page 2

PTO/SB/57 (02-09)
Approved for use through 02/28/2013.  OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. [X] The attached detailed request includes at least the following items:

    a.  A statement identifying each substantial new question of patentability based on prior patents and printed publications.  37 CFR 1.510(b)(1)
    b.  An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested.  37 CFR 1.510(b)(2).

13. [ ] A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. [ ] a.  It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
    The name and address of the party served and the date of service are:

_____

_____

_____

Date of Service:_____; or

   [ ] b.  A duplicate copy is enclosed because service on patent owner was not possible.  An explanation of the efforts made to serve patent owner **is attached**.  See MPEP 2220.

15.  Correspondence Address: Direct all communications about the reexamination to:

   [X]  The address associated with Customer Number:      29484

**OR**

   [ ]  Firm or
Individual Name _____

Address

| City | State | Zip |
|------|-------|-----|
|      |       |     |

Country

| Telephone | Email |
|-----------|-------|
|           |       |

16. [ ] The patent is currently the subject of the following concurrent proceeding(s):
   [ ] a.  Copending reissue Application No. _____
   [ ] b.  Copending reexamination Control No. _____
   [ ] c.  Copending Interference No. _____
   [X] d.  Copending litigation styled:
    CompuFill, LLC v. Walgreens Co., et al.

    U.S. Court S.D. of CA(Case No. 3:11-cv-01114-LAB-BGS)

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| /Hazim Ansari/ | 11-09-2011 |
|----------------|------------|
| Authorized Signature | Date |
| Hazim Ansari | 40,896   [X] For Patent Owner Requester |
| Typed/Printed Name | Registration No.   [ ] For Third Party Requester |

[Page 2 of 2]

Exhibit 1  Page 3

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Exhibit____1____ Page____4____

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Attachment to Form PTO-1465 | ) |
| Control Number 90/011,962 | ) |
| Corrected Request for Reexamination of | ) |
| **U.S. Patent No. 6,728,684** | ) |
| | ) |
| Inventor:   **Richard W. Reichert** | ) |
| | ) |
| Issue Date:   **April 27, 2004** | ) |
| | ) |
| Filed:   **September 17, 1999** | ) |
| | ) |
| Title:   **On-Line Pharmacy** | ) |
| **Automated Refill System** | ) |

### CORRECTED REQUEST FOR *EX PARTE* REEXAMINATION OF
### U.S. PATENT NO. 6,728,684

Mail Stop Ex Parte Reexamination                      November 9, 2011
Commissioner for Patents
Box Ex Parte Reexam
Alexandria, VA 22313-1450


Sir:


## I.   **REQUEST**

Pursuant to 35 U.S.C. §§ 302-307 and 37 C.F.R. § 1.510, CompuFill, LLC

("CompuFill") submits a corrected request to reexamine claims 1, 2, 8, and 9 of United States

Patent No. 6,728,684 (the '684 Patent"), entitled "On-Line Pharmacy Automated Refill System",

a copy of which is attached as Exhibit A.  The '684 Patent has not yet expired and is therefore

subject to reexamination.

I hereby certify that this correspondence is being uploaded to the United States Patent and Trademark Office's PAIR Site on
November 9, 2011.

_____
Hazim Ansari
40,896

1

Exhibit____1____Page___5___

On October 14, 2011, CompuFill filed an ex parte reexamination request for claims 1, 2, 8, and 9 of the '684 Patent.  The reexamination request was issued Control number 90/011,962. The Central Reexamination Unit ("CRU") responded on October 20, 2011 with a statement that CompuFill's reexamination request could not be processed because "[a] statement pointing each substantial new question of patentability based on the cited patents & printed publications, and a detailed explanation of the pertinency and manner of applying the patents & printed publications to every claim for which reexamination is requested" and "[a] certification by the third party requester that a copy of the request has been served in its entirety on the patent owner at the address provided for in 37 C.F.R. 1.33(c)" were missing.

More specifically, the CRU states that CompuFill's reexamination request a) does not clearly explain, for each identified substantial new question of patentability, which teachings are substantially different than those considered in the previous examination of the patent by the Office and b) does not provide at least one basis for combining the cited references and a statement why the claim(s) under reexamination would have been obvious over the proposed reference combination.

By this corrected filing, CompuFill, the owner of the '684 Patent, is providing a) a replacement statement and explanation pursuant to 37 C.F.R. Section 1.510(b)(1)(2), which identifies a substantial new question of patentability (see Section V.g), b) an explanation of the pertinency and manner of applying each of the cited prior art documents for every claim for which reexamination is requested in accordance with 37 C.F.R. 1.510(b)(1)(2) (see Exhibit L, Claim Charts), and c) a replacement Form PTO/SB/08a PTO-1449 listing only those references discussed in a statement identifying a substantial new question.

## II. STATEMENT OF OWNERSHIP

CompuFill is the owner of all right, title, and interest in and to the '684 Patent.  Inventor Richard W. Reichert assigned his right, title, and interest in and to the '684 Patent on January 5, 2011.  The assignment was recorded on March 3, 2011 at Reel 025899, Frame 0478, as detailed in CompuFill's statement under 37 C.F.R. 3.73(b) which accompanies this filing.

Accordingly, a certification by the third party requester that a copy of the request has been served in its entirety on the patent owner at the address provided for in 37 C.F.R. 1.33(c) is not required.

2



III. **STATEMENT OF CONCURRENT PROCEEDINGS**

Pursuant to 37 C.F.R. § 1.565(a) and MPEP § 2207, CompuFill brings to the Commissioner's attention an action commenced by CompuFill, LLC, the owner of the '684 Patent, against Walgreens Co., CVS Caremark Corporation, Wal-Mart Stores, Inc., Target Corporation, and Costco Wholesale Corporation ("Defendants") on May 20, 2011 in the United States District Court for the Southern District of California (Case No. 3:11-cv-01114-LAB-BGS) for infringement of the '684 Patent.  A copy of CompuFill's Complaint is attached as Exhibit B. Defendants answered the complaint by denying infringement of the '684 Patent and asserting that the '684 Patent is invalid.  A copy of each of the Defendant's Answers, filed on July 13, 2011, is attached as Exhibits C, D, E, F, and G.  The suit is currently pending in the Southern District of California.

IV. **CLAIMS FOR WHICH REEXAMINATION IS REQUESTED**

Reexamination is requested of Claims 1, 2, 8, and 9 of the '684 Patent in view of the following prior art printed publications which are listed on an Information Disclosure Statement (IDS) that accompanies this filing.  Prior art printed publications 2, 3, and 4, listed below, were not considered in the course of the prosecution of the '684 Patent.  Prior art printed publication WO 95/29455 was considered in the course of the prosecution of the '684 Patent.

Prior Art Printed Publications
1. Fillingane et al., WO 95/29455, Electronic Hand-Held Prescription Writing and Transmitting Device, April 20, 1995, a copy of which is attached hereto as Exhibit H.
2. RFC 793, Transmission Control Protocol, DARPA Internet Program, Protocol Specification, September 1981, a copy of which is attached hereto as Exhibit I.
3. Functional Specification for Bank of America Versatel Home Banking System, September 2, 1980, a copy of which is attached hereto as Exhibit J.
4. Moosemiller, "AT&T CONVERSANT I Voice System", Speech Technology, Mar/Apr 1986, a copy of which is attached hereto as Exhibit K.

3

## V. STATEMENT POINTING OUT A SUBSTANTIAL NEW QUESTION OF PATENTABILITY

### a. The Standard for Whether a Substantial New Question of Patentability Exists

According to MPEP § 2242, "[a] prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. If the prior art patents and/or publications would be considered important, then the examiner should find "a substantial new question of patentability" unless the same question of patentability has already been decided as to the claim in a final holding of invalidity by the Federal court system or by the Office in a previous examination." MPEP § 2242 further sets forth the following criteria for determining whether a substantial new question of patentability exists:

> For "a substantial new question of patentability" to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be <u>important</u> in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.

To raise a substantial new question of patentability, a requester is not required to take the affirmative position that the claims for which reexamination is being requested are, in fact, invalid, anticipated, or rendered obvious by the prior art. Accordingly, CompuFill submits that, while the teachings of the prior art references identified herein raise a substantial new question of patentability that was not previously considered during prosecution regarding at least one of the claims in the '684 Patent, claims 1, 2, 8, and 9 are not rendered unpatentable by the cited art.

4



### b.  Teachings of the '684 Patent

The '684 Patent discloses an on-line pharmacy automated refill system in which a client computer, designed to answer incoming telephone calls from a patient's telephone and accept information from the patient, communicates prescription refill requests to a host computer.  The host computer contains the patient information databank or patient database and provides practically instantaneous information to client computer using one or more interactive communication links that support interactive communications, including LAN connections.  The client computer possesses automated refill system software that causes the client computer to answer incoming telephone lines, interact with patients over the telephone to collect specific information, and manage interactive communications with host computer.

The '684 Patent recognizes that, at times, on-line communications between the client computer and host computer may be interrupted.  See, e.g., the '684 Patent, Col. 3:64-67.

> In practice, client computer 10 preferably uses a specific initiator message to test the current interactive communications status with host computer 16 and also a specific initiator message to make prescription refill request inquiries. Host computer 16 sends specific response messages with respect to the specific initiator messages back to client computer 10 so that appropriate actions can be taken, such as informing the calling patient of his or her prescription status. If no response message is received by client computer 10 after an initiator message has been sent, interactive communications between host computer 16 and client computer 10 have been interrupted.

While the client computer does not control the on-line or off-line interactive communications capabilities of host computer, it can determine if interactive communications are available.  In practice, the interactive communications capabilities of host computer may not be available to client computer for a variety of reasons. For example, a system operator of host computer may be performing maintenance work, electrical storms may be disrupting communications links, or power failures may occur, among other reasons.

5

Exhibit____1____Page____9____

The '684 Patent contemplates the possibility that a client and host computer may be on-line[1] but that there may be temporary instances where on-line communications are not available and must be restored.

> When client computer 10 is on-line with host computer 16 and a patient calls client computer 10 and requests a prescription refill, client computer 10 performs off-line detection by using a verification transaction, a software method, or by monitoring statuses rendered from other communications-related hardware devices, as represented by box 244. The verification transaction immediately determines, as represented by box 245, whether interactive communications with host computer 16 are available to perform inquiries.

> If interactive communications with host computer 16 are not available at that moment, i.e., host computer 16 is off-line, then off-line communications processing is initiated…Local database 14 of client computer 10 then stores the caller's request…for validation processing when on-line communications with host computer 16 are restored.

Claim 1 of the '684 Patent claims a method for processing requests for prescription refills between one or more client computers and a host computer, comprising the steps of: receiving a request for a prescription refill from a caller, said receiving of said request being facilitated by a client computer; storing said request until on-line communications with a host computer are established, said storing of said request being facilitated by a first client computer storage means; establishing a communication link between said client computer and said host computer, said establishing of said communication link being facilitated by a communication network; and processing said request between said client computer and said host computer, said processing of said request being facilitated first client computer code segment and a first host code segment.

Accordingly, a system that processes requests for prescription refills by a) receiving a request for a prescription refill from a caller using a client computer; b) having the client computer store the request locally, at least temporarily, such that it is available to transmit to a host computer in situations where, at the time of receiving the request, the client and host computer are off-line or where, at the time of receiving the request, communications between the

---

[1] According to the '684 Patent, "[a] software command referred to as the "host on command" can be issued by an operator. The "host on command" configures client computer 10 to operate with the assumption that interactive communications with host computer 16 are available. Client computer 10 then functions according to the configuration and does expect but does not require interactive communications with host computer 16 to exist." Col.5:7-13.  See also Col.10:57-60, "Once it is determined that the client computer 10 is not in communication with host computer 16 or the system is off-line, and requests for refills are received by client computer 10, the requests are stored for validation processing."

6

client and host have been temporarily interrupted, c) establishing a communication link between the client computer and host computer via a communication network, and d) processing the request between the client computer and host computer using code segments would fall within the scope of claim 1.

Claim 2 of the '684 Patent claims a method for processing requests for prescription refills between one or more client computers and a host computer, comprising the steps of: receiving a request for a prescription refill from a caller, said receiving of said request being facilitated by a client computer; storing said request until on-line communications with a host computer are established, said storing of said request being facilitated by a first client computer storage means; establishing a communication link between said client computer and said host computer, said establishing of said communication link being facilitated by a communication network; and processing said request between said client computer and said host computer, said processing of said request being facilitated first client computer code segment and a first host code segment, wherein said step of receiving a request is further defined as: answering an incoming telephone call from a caller, said answering of said incoming telephone call being facilitated by a client computer; and receiving a request for a prescription refill from said caller.

Accordingly, a system that processes requests for prescription refills by a) answering a call and receiving a request for a prescription refill using a client computer; b) having the client computer store the request locally, at least temporarily, such that it is available to transmit to a host computer in situations where, at the time of receiving the request, the client and host computer are off-line or where, at the time of receiving the request, communications between the client and host have been temporarily interrupted, c) establishing a communication link between the client computer and host computer via a communication network, and d) processing the request between the client computer and host computer using code segments would fall within the scope of claim 2.

Claim 8 of the '684 Patent claims a computer program embodied on computer-readable medium having a computer readable program code embodied in said medium for effecting a method of processing requests for prescription refills between at least one client computer and a host computer, comprising: a code segment for receiving a request for a prescription refill from a caller; a code segment for storing said request until on-line communications with a host computer is established; a code segment for establishing a communication link between said

7

Exhibit __1__ Page __11__

client computer and said host computer; and a code segment for processing said request between said client computer and said host computer.

Accordingly, a system that processes requests for prescription refills by a) receiving a request for a prescription refill from a caller using a client computer; b) having the client computer store the request locally, at least temporarily, such that it is available to transmit to a host computer in situations where, at the time of receiving the request, the client and host computer are off-line or where, at the time of receiving the request, communications between the client and host have been temporarily interrupted, c) establishing a communication link between the client computer and host computer via a communication network, and d) processing the request between the client computer and host computer using code segments would fall within the scope of claim 8.

Claim 9 of the '684 Patent claims a computer program embodied on computer-readable medium having a computer readable program code embodied in said medium for effecting a method of processing requests for prescription refills between at least one client computer and a host computer, comprising: a code segment for receiving a request for a prescription refill from a caller; a code segment for storing said request until on-line communications with a host computer is established; a code segment for establishing a communication link between said client computer and said host computer; and a code segment for processing said request between said client computer and said host computer, wherein said a code segment for receiving said request is further defined as: a code segment for answering an incoming telephone call from a caller; and a code segment for receiving an audible request for a prescription refill from said caller.

Accordingly, a system that processes requests for prescription refills by a) answering a call and receiving a request for a prescription refill using a client computer; b) having the client computer store the request locally, at least temporarily, such that it is available to transmit to a host computer in situations where, at the time of receiving the request, the client and host computer are off-line or where, at the time of receiving the request, communications between the client and host have been temporarily interrupted, c) establishing a communication link between the client computer and host computer via a communication network, and d) processing the request between the client computer and host computer using code segments would fall within the scope of claim 9.

8

c.  **Reference One: Fillingane et al., WO 95/29455, Electronic Hand-Held Prescription Writing and Transmitting Device, April 20, 1995**

PCT Publication No. WO 95/29455 (the "'455 Publication") discloses a method of portably issuing drug prescriptions comprising the steps of (1) entering for storage drug prescription related information in a hand held, battery powered, portable, prescription printing and transmitting device including a physician's prescription list of drugs commonly prescribed by the physician, a security access code for the physician and prescription heading including the physician's name and registration number and (2) accessing, through entry of the security access code, from storage for viewing on a display of the hand held portable prescription printing and transmitting device prestored drug prescription related information including patient information and drug related information for a prescription to be printed for the patient. See the '455 Publication, pages 2-3.

The '455 Publication further teaches:

Refill instructions will be requested with the appropriate numeral key 36 to be pressed. Pressing "Enter" function key 36 will automatically enter the drug as directed. You can add other drugs desired in sequential order by pressing the desired drug code numbers followed by pressing "N" or "Y" for changes required. You are then asked to respond to the number of refills desired. Pressing numeral keys 36 to answer refill question, then pressing "Enter" function key 36 to enter the drug…Patient drug database can be accessed by initially entering the "Operate 2" selection on the main screen and then entering the patient name or patient file number. See the '455 Publication, pages 6-7.

The '455 Publication further teaches:

Prescriptions transmission to a pharmacy can be performed with his device via a modem transmission to a pharmacy previously registered with the Rx-Script System. The patient information along with the desired prescriptions are entered into the device as described in sections A1-A2 and B1-B2. The device should be plugged into an acceptable modem device functional with the "Rx-Script" system. See the '455 Publication, pages 8-9.

9

**d. Reference Two: RFC 793, Transmission Control Protocol, DARPA Internet Program, Protocol Specification, September 1981**

The RFC 793 Transmission Control Protocol Specification, dated September 1981, ("TCP Protocol") states in Section 1.5, under "Reliability":

> The TCP must recover from data that is damaged, lost, duplicated, or delivered out of order by the internet communication system. This is achieved by assigning a sequence number to each octet transmitted, and requiring a positive acknowledgment (ACK) from the receiving TCP. ***If the ACK is not received within a timeout interval, the data is retransmitted.*** At the receiver, the sequence numbers are used to correctly order segments that may be received out of order and to eliminate duplicates. Damage is handled by adding a checksum to each segment transmitted, checking it at the receiver, and discarding damaged segments. As long as the TCPs continue to function properly and the internet system does not become completely partitioned, no transmission errors will affect the correct delivery of data. TCP recovers from internet communication system errors. *See* the TCP Protocol, page 7 (emphasis added).

The TCP Protocol further states in Section 2.6:

> Transmission is made reliable via the use of sequence numbers and acknowledgments. Conceptually, each octet of data is assigned a sequence number. The sequence number of the first octet of data in a segment is transmitted with that segment and is called the segment sequence number. Segments also carry an acknowledgment number which is the sequence number of the next expected data octet of transmissions in the reverse direction. When the TCP transmits a segment containing data, it puts a copy on a retransmission queue and starts a timer; when the acknowledgment for that data is received, the segment is deleted from the queue. ***If the acknowledgment is not received before the timer runs out, the segment is retransmitted***. *See* the TCP Protocol, page 12 (emphasis added).

The TCP Protocol further states in Section 3.7, under "Retransmission Timeout":

> Because of the variability of the networks that compose an internetwork system and the wide range of uses of TCP connections the retransmission timeout must be dynamically determined. One procedure for determining a retransmission time out is given here as an illustration....Measure the elapsed time between sending a data octet with a particular sequence number and receiving an acknowledgment that covers that sequence number (segments sent do not have to match segments received). This measured elapsed time is the Round Trip Time (RTT). Next compute a Smoothed Round Trip Time (SRTT) as: SRTT = ( ALPHA * SRTT ) +

10



((1-ALPHA) * RTT) and based on this, compute the retransmission timeout (RTO) as: RTO = min[UBOUND,max[LBOUND,(BETA*SRTT)]] where UBOUND is an upper bound on the timeout (e.g., 1 minute), LBOUND is a lower bound on the timeout (e.g., 1 second), ALPHA is a smoothing factor (e.g., .8 to .9), and BETA is a delay variance factor (e.g., 1.3 to 2.0).  *See* the TCP Protocol, page 42.

     **e.**   **Reference Three: Functional Specification for Bank of America Versatel Home Banking System, September 2, 1980**

The Functional Specification for Bank of America Versatel Home Banking System, dated September 2, 1980, ("Versatel") discloses:

     T-COMM systems will carry out a complete dialogue with the caller in order to collect sufficient information to create a home banking request.  The dialogue extends from the initial answer of the telephone call and the subsequent greetings message to the verification of the entire request and final answer to the caller.

     The normal dialogue consists of a series of questions asked by T-COMM and answers provided by the caller using this Touch Tone telephone or pad.

     During the dialogue, T-COMM handles error correction conditions by allowing re-entry of data or ultimately by referral to a human operator.  Other features provided include caller requests for re-entry, for re-starting the request, for repeating the previous statement, for referring the call to a human operator and for terminating the call.

     An important part of this dialogue is the thorough checking which accompanies each item entered and the final computations done by T-COMM as part of the overall home banking environment.

     Following the dialogue to gather input data for a home banking request, T-COMM will state the final outcome of the request and allow the caller to enter another request without having to call again.  The dialogue has a large amount of verification and checking along with repeating of resultant action taken for each request.  This particular approach provides a thoroughly humanized and highly accurate dialogue to meet the needs for accurate data entry when dealing with the general public.

     Complete home banking consists of a combination of caller dialogue features which are unique to each type of request by the caller.  The finished home banking request will be processed by the Home Banking Application which may require interaction with the host data base. Finally the result of the request may be sent to the host for final data base update.  See Versatel, page 5.

11

Exhibit____1____ Page____15____

**f.   Reference Four: Moosemiller, "AT&T CONVERSANT I Voice System",**
     **Speech Technology, Mar/Apr 1986.**

The article "AT&T CONVERSANT I Voice System", published in Speech Technology in Mar/Apr 1986 ("Conversant"), teaches, on page 1:

> In September 1985, AT&T Conversant Systems introduced the CONVERSANT I Voice System, a voice response and speech recognition product for the growing market of automated information services. This system accesses data bases via the public telephone network. Telephones, rotary or touch-tone, can become instant terminals eliminating the need for costly computer peripherals and providing easy availability.
>
> The CONVERSANT I has many speech capabilities. Callers access the system through touch-tone signals, speaking isolated words and connected digit strings, or by using modems and data terminal equipment. The system responds with high quality, natural-sounding speech using an advanced speech coding algorithm developed by AT&T.
>
> CONVERSANT I applications include the following broad areas of information dissemination:
> - financial services
> - credit authorization
> - wholesale and retail distribution
> - sales order entry
> - direct marketing
> - transportation scheduling and dispatching
> - college registration
> - communication services

**g.   The TCP Protocol Teachings Were Not Considered In The Previous**
     **Examination Of The '684 Patent By The Office**

During the course of prosecuting the '684 Patent, the Office rejected pending claims 2-15 as being anticipated by the '455 Publication (WO 95/29455, Rogers). According to the Office Action, dated October 23, 2001:

> Rogers ('455) discloses:
>
> At least one client computer having means to receive at least one request for a prescription refill, see figure 2 and figure 4A, means to store each prescription refill request, see figure 4A (store drug refills in memory) and means for processing said request, see figure 2;

12

Exhibit_____1_____ Page_____16_____

A host computer, said host computer having means to process said prescription requests;

Means for establishing a communication link between said host computer and each said client computer, see figure 4C (transmit prescription) and page 8, line 33-page 9, line 15.  See page 2, October 23, 2001 Office Action, Exhibit M.

The Office determined, however, that:

The prior art of record, specifically Charhut et al '762 in view of Jain et al ('647) does not disclose or fairly teach

receiving a request for a prescription refill facilitated by a client computer; storing, at the client computer, the request until on-line communications with a host are established as claimed. Id. at 3.

Relative to the claims at issue and the '455 Publication, which was considered in the course of prosecution, the Versatel and Conversant references do not present a new, non-cumulative technological teaching.

The TCP Protocol reference does, however, present a new, non-cumulative technological teaching.  The art cited in the course of the prosecution of the '684 Patent does not appear to teach storing, at a client computer, a request until on-line communications with a host are established.  The TCP Protocol reference discloses transmitting data from a client to a host and storing that data at the client to enable the recovery of data if it is lost by the internet communication system, which would occur in situations where on-line communications with a host are temporarily interrupted.  *See* TCP Protocol, Section 1.5, 7 ("[t]he TCP must recover from data that is…lost…by the internet communication system.  This is achieved by assigning a sequence number to each octet transmitted, and requiring a positive acknowledgment (ACK) from the receiving TCP.  If the ACK is not received within a timeout interval, the data is retransmitted.").

As further discussed in Section VI and Exhibit L, given that the TCP Protocol reference discusses a way of establishing communications between two computers, it would have been obvious, to one of ordinary skill in the art, to combine the communication methodology of the TCP Protocol (where data is stored at a client and then retransmitted to a host when possible, i.e. when communications with the host have been established) with the phone processing systems of the '455 Publication, Versatel publication, and/or Conversant publication to render unpatentable claims 1, 2, 8, and 9 of the '684 Patent.

13

## VI. <u>EXPLANATION OF PERTINENCY AND MANNER OF APPLYING CITED PRIOR ART TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED</u>

The TCP Protocol reference in combination with at least one of the '455 Publication, Versatel publication, and/or Conversant publication raise a substantial new question of patentability with respect to claims 1, 2, 8, and 9 of the '684 Patent.  More specifically, each of claims 1, 2, 8, and 9 of the '684 Patent are unpatentable under 35 U.S.C. Section 103 as being obvious over the '455 Publication in view of the TCP Protocol.  Additionally, each of claims 1, 2, 8, and 9 of the '684 Patent are unpatentable under 35 U.S.C. Section 103 as being obvious over the Versatel publication in view of the TCP Protocol.   Finally, each of claims 1, 2, 8, and 9 of the '684 Patent are unpatentable under 35 U.S.C. Section 103 as being obvious over the Conversant publication in view of the TCP Protocol.   Provided in Exhibit L are claim charts that provide an explanation of the pertinency and manner of applying each of the cited prior art documents for every claim for which reexamination is requested in accordance with 37 C.F.R. 1.510(b)(1)(2).

The '455 Publication discloses that prescription transmissions can be submitted from a client device to a pharmacy via a modem transmission.  The Versatel publication teaches a system that will carry out a complete dialogue with a caller in order to collect sufficient information to create a home banking request, and, following the dialogue to gather input data for a home banking request, will processed the data which may require interaction with the host data base. Conversant teaches a voice response and speech recognition product for the growing market of automated information services in which a system accesses data bases via the public telephone network.

The TCP Protocol publication discloses that, because data may be damaged, lost, duplicated, or delivered out of order by the internet communication system (due to, for example, a temporary interruption in on-line communications), data may be need to be retransmitted from one computer to another computer, particularly if an acknowledgement is not received. Therefore, if there's a temporary interruption in a TCP communication link between two

14

computers, data would remain stored, for at least some time, at the transmitting computer until the temporary interruption is alleviated.

The '455 Publication, Versatel reference, and Conversant reference would therefore be considered material to an Examiner when considering each of the following parts of the claims at issue:

*Claim 1*

- A method for processing requests for prescription refills between one or more client computers and a host computer;
- Receiving a request for a prescription refill from a caller, said receiving of said request being facilitated by a client computer;
- Establishing a communication link between said client computer and said host computer, said establishing of said communication link being facilitated by a communication network;
- Processing said request between said client computer and said host computer, said processing of said request being facilitated first client computer code segment and a first host code segment.

*Claim 2*

- A method for processing requests for prescription refills between one or more client computers and a host computer;
- Receiving a request for a prescription refill from a caller, said receiving of said request being facilitated by a client computer;
- Answering an incoming telephone call from a caller, said answering of said incoming telephone call being facilitated by a client computer; and receiving a request for a prescription refill from said caller;
- Establishing a communication link between said client computer and said host computer, said establishing of said communication link being facilitated by a communication network;
- Processing said request between said client computer and said host computer, said processing of said request being facilitated first client computer code segment and a first host code segment.

15



Exhibit _____1_____ Page _____19_____

*Claim 8*

- A computer program embodied on computer-readable medium having a computer readable program code embodied in said medium for effecting a method of processing requests for prescription refills between at least one client computer and a host computer;
- A code segment for receiving a request for a prescription refill from a caller;
- A code segment for establishing a communication link between said client computer and said host computer;
- A code segment for processing said request between said client computer and said host computer.

*Claim 9*

- A computer program embodied on computer-readable medium having a computer readable program code embodied in said medium for effecting a method of processing requests for prescription refills between at least one client computer and a host computer;
- A code segment for receiving a request for a prescription refill from a caller;
- A code segment for answering an incoming telephone call from a caller and a code segment for receiving an audible request for a prescription refill from said caller;
- A code segment for establishing a communication link between said client computer and said host computer;
- A code segment for processing said request between said client computer and said host computer.

The TCP Protocol reference would therefore be considered material to an Examiner when considering each of the following parts of the claims at issue:

*Claim 1*



- Storing said request until on-line communications with a host computer are established, said storing of said request being facilitated by a first client computer storage means.

*Claim 2*

- Storing said request until on-line communications with a host computer are established, said storing of said request being facilitated by a first client computer storage means.

*Claim 8*

- A code segment for storing said request until on-line communications with a host computer is established.

*Claim 9*

- A code segment for storing said request until on-line communications with a host computer is established.

## VII.    **CONCLUSION**

It is submitted that the prior art references cited herein raise a substantial new question of patentability as to the subject matter of Claims 1, 2, 8, and 9 of the '684 Patent.  Accordingly, it is requested that an order of reexamination be granted.

Respectfully submitted,

Hazim Ansari
Reg. No. 40,896

191 W. Second St.
Santa Ana, CA 92701
800-508-1080
714-464-5413

17

Exhibit____/____Page____21

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( **Not for submission under 37 CFR 1.99)**

| Application Number | |
|---|---|
| Filing Date | 2011-10-14 |
| First Named Inventor | Richard Reichert |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | CMF.101 |

### U.S.PATENTS

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.

### U.S.PATENT APPLICATION PUBLICATIONS

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

### FOREIGN PATENT DOCUMENTS

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | WO 95/29455 | US | | 1995-11-02 | Sam Fillingane | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

Exhibit_____Page___22_

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | 2011-10-14 |
| | First Named Inventor | Richard Reichert |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | CMF.101 |

| | | | |
|---|---|---|---|
| | 1 | Functional Specifications for Bank of America Versatel Home Banking System, September 2, 1980 | ☐ |
| | 2 | Moosemiller, "AT&T Conversant I Voice System", Speech Technology, Mar/Apr 1986 | ☐ |
| | 3 | RFC 793, Transmission Control Protocol, DARPA Internet Program, Protocol Specification, September 1981 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | |
| | Filing Date | 2011-10-14 |
| | First Named Inventor | Richard Reichert |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | CMF.101 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☒ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Hazim Ansari/ | Date (YYYY-MM-DD) | 2011-11-09 |
|---|---|---|---|
| Name/Print | Hazim Ansari | Registration Number | 40,896 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Exhibit____/____Page__25__

**EXHIBIT A:**
**U.S. PATENT NO. 6,728,684**

US006728684B1

(12) **United States Patent** (10) Patent No.: **US 6,728,684 B1**
Reichert (45) Date of Patent: **Apr. 27, 2004**

(54) **ON-LINE PHARMACY AUTOMATED REFILL SYSTEM**

(76) Inventor: **Richard W. Reichert**, 4011 Joshua La., Dallas, TX (US) 75287

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/398,131**

(22) Filed: **Sep. 17, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 08/961,652, filed on Oct. 31, 1997, now Pat. No. 5,970,462.

(51) Int. Cl.[7] ............................................... **G06F 17/60**
(52) U.S. Cl. ...................................................... **705/2**
(58) Field of Search .......................... 705/2, 3; 235/375; 700/216; 600/300

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,766,542 A | * | 8/1988 | Pilarczyk ........................ 705/3 |
| 5,070,452 A | | 12/1991 | Doyle, Jr. et al. .......... 364/401 |
| 5,148,474 A | | 9/1992 | Haralambopoulos et al. ........................ 379/111 |
| 5,208,762 A | | 5/1993 | Charhut et al. ............. 364/478 |
| 5,500,890 A | | 3/1996 | Rogge et al. .................. 379/91 |
| 5,737,396 A | * | 4/1998 | Garcia .................... 379/88.16 |
| 5,742,674 A | | 4/1998 | Jain et al. ................... 379/209 |
| 5,845,255 A | * | 12/1998 | Mayaud ........................ 705/3 |

FOREIGN PATENT DOCUMENTS

WO     WO 95/29455     * 11/1995

OTHER PUBLICATIONS

Bush, Anne; Technology turns the local corner drugstore into national pharmacy; Feb. 1995; Automatic I.D. News, p1; Dialog copy pp. 1–2.*

* cited by examiner

*Primary Examiner*—Thomas A. Dixon
(74) *Attorney, Agent, or Firm*—Head, Johnson & Kachigian

(57) **ABSTRACT**

An interative computer request processing system. In the preferred embodiment, the request processing system utilizes telephone and computer equipment to accept refill requests for patient prescriptions. The system receives information from a patient and performs prescription inquiries to a databank to determine patient information such as the status of prescriptions. The system remains operational whether or not interactive communications can be achieved with the databank. If communications are not available, the system stores the patient information. Therefore, the system always appears to the caller to be fully operational regardless of whether interactive communications are available. When communications are re-established, the databank and prescription inquiries are conducted, whereby the system validates or invalidates requests based on specified criteria. In a preferred embodiment, the system automatically attempts to notify a patient that the patient's request is invalid, thereby alerting the patient that the patient's prescription has not been filled.

**14 Claims, 25 Drawing Sheets**



Exhibit 1 Page 27

Case 3:11-cv-01114-CAB-BGS   Document 48-2   Filed 03/06/12   Page 27 of 100

# Figure 1





**Figure 2**

## Figure 3a



Exhibit ___1___ Page __30__

# Figure 3b



# Figure 4



Exhibit ___1___ Page ___32___


# Figure 5a



# Figure 5b



Exhibit 1   Page 34

# Figure 5c



# Figure 5d



Exhibit ___1___ Page ___36___

Case 3:11-cv-01114-CAB-BGS   Document 48-2   Filed 03/06/12   Page 36 of 100

# Figure 5e



Exhibit ___1___ Page ___37___

# Figure 5e-1



Exhibit ___1___ Page 38

# Figure 5e-2



Exhibit   1   Page   39

Case 3:11-cv-01114-CAB-BGS   Document 48-2   Filed 03/06/12   Page 39 of 100

# Figure 6a



Exhibit __/__ Page __40__

# Figure 6a-1



Exhibit __1__ Page __41__

# Figure 6a-2



Exhibit____1____Page____42____

# Figure 6b



Exhibit____1____Page____43____

# Figure 6b-1



Exhibit ___1___ Page ___4/4___

# Figure 6b-2



Exhibit ___1___ Page___4/5___

## Figure 7a

**CLIENT COMPUTER CONFIGURED FOR ON-LINE COMMUNICATIONS**

*ISSUING* HOST ON command by OPERATOR.

*EXECUTING* SOFTWARE on CLIENT computer.

    <u>*WAITING* for incoming telephone call</u>

      0 *IF*    INCOMING CALL available
      0 *THEN*
            *ANSWERING* incoming telephone call.
            *PLAYING* options for services to caller.
            *SELECTING* service option by caller.
            *REQUESTING* prescription refill service by caller.
            *ASSESSING* status of ON-LINE COMMUNICATIONS with HOST
                computer.

    <u>*CAPTURING REQUESTS* from caller</u>

      1 *IF*     ON-LINE COMMUNICATIONS available
      1 *THEN*
            *CAPTURE* REQUEST from caller.
            *VALIDATE* REQUEST on HOST computer.

                  2 *IF*    REQUEST is VALID
                  2 *THEN*
                      *STORE* VALID REQUEST for
                          DISPENSE PROCESSING.
                      *INFORM* caller of VALIDATED status.
                  2 *ELSE*
                  2 *IF*    REQUEST is NOT VALID
                  2 *THEN*
                      *INFORM* caller of VALIDATED status.
      1 *ELSE*
      1 *IF*     ON-LINE COMMUNICATIONS are not available
      1 *THEN*
            *CAPTURE* REQUEST from caller.
            *STORE* REQUEST for VALIDATION PROCESSING.
            *INFORM* caller of UNVALIDATED status.

               (continued on figure 7b)

Flow Charts - Figures 3a and 3b

Exhibit 1 Page 46

**Figure 7b**

**CLIENT COMPUTER CONFIGURED FOR ON-LINE COMMUNICATIONS**

(continued from figure 7a)

*ASK* caller if another REQUEST is desired.

1 *IF*     Another REQUEST is desired
1 *THEN*
              Go to  "*CAPTURING REQUESTS* from caller"
1 *ELSE*
              End telephone call.
              Go to "*WAITING* for incoming telephone call"
0 *ELSE*
          Go to "*WAITING* for incoming telephone call"

Flow Charts - Figures 3a and 3b

Exhibit_____ |____ Page____47____

## Figure 8

**CLIENT COMPUTER CONFIGURED FOR OFF-LINE COMMUNICATIONS**

*ISSUING* HOST OFF command by OPERATOR.

*EXECUTING* SOFTWARE on CLIENT computer.

<u>*WAITING* for incoming telephone call</u>

0 *IF*    INCOMING CALL available
0 *THEN*
        *ANSWERING* incoming telephone call.
        *PLAYING* options for services to caller.
        *SELECTING* service option by caller.
        *REQUESTING* prescription refill service by caller.

    <u>*CAPTURING REQUESTS* from caller</u>

    *CAPTURE* REQUEST from caller.
    *STORE* REQUEST for VALIDATION PROCESSING.
    *INFORM* caller of UNVALIDATED status.

    *ASK* caller if another REQUEST is desired.

1 *IF*    Another REQUEST is desired
1 *THEN*
        Go to  "<u>*CAPTURING REQUESTS* from caller</u>"
1 *ELSE*
        End telephone call.
        Go to "<u>*WAITING* for incoming telephone call</u>"
0 *ELSE*
        Go to "<u>*WAITING* for incoming telephone call</u>"

Flow Chart - Figure 2

## Figure 9a

**CLIENT COMPUTER CONFIGURED FOR ON-LINE COMMUNICATIONS WITH AUTOMATIC VALIDATION AND NOTIFICATION PROCESSING**

*ISSUING* HOST ON command by OPERATOR.

*EXECUTING* SOFTWARE on CLIENT computer.

    *WAITING* for incoming telephone call

    0 *IF*    INCOMING CALL available
    0 *THEN*
        *ANSWERING* incoming telephone call.
        *PLAYING* options for services to caller.
        *SELECTING* service option by caller.
        *REQUESTING* prescription refill service by caller.
        *ASSESSING* status of ON-LINE COMMUNICATIONS with HOST
            computer.

    *CAPTURING* REQUESTS from caller

    1 *IF*    ON-LINE COMMUNICATIONS available
    1 *THEN*
        *CAPTURE* REQUEST from caller.
        *PREPARE* REQUEST for INQUIRY TRANSACTION.
        *VALIDATE* REQUEST on HOST computer.

        2 *IF*    REQUEST is VALID
        2 *THEN*
            *STORE* VALID REQUEST for DISPENSE
                PROCESSING.
            *INFORM* caller of VALIDATED status.
        2 *ELSE*
        2 *IF*    REQUEST is NOT VALID
        2 *THEN*
            *INFORM* caller of VALIDATED status.

    1 *ELSE*

(continued on figure 9b)

Flow Charts - Figures 5a through 5e

Exhibit _____1_____ Page_____49_____

**Figure 9b**

**CLIENT COMPUTER CONFIGURED FOR ON-LINE COMMUNICATIONS WITH
AUTOMATIC VALIDATION PROCESSING**


(continued from figure 9a)

1 *IF*      ON-LINE COMMUNICATIONS are not available
1 *THEN*
          *CAPTURE* REQUEST from caller.
          *STORE* REQUEST for VALIDATION
                  PROCESSING.
          *INFORM* caller of UNVALIDATED status.

   *ASK* caller if another REQUEST is desired.

   1 *IF*     Another REQUEST is desired
   1 *THEN*
             Go to  "*CAPTURING* REQUESTS from caller"
   1 *ELSE*
             End telephone call.
0 *ELSE*
          End telephone call.

*TESTING* for UNVALIDATED REQUESTS in need of VALIDATION
          PROCESSING.

0 *IF*     A REQUEST exists
0 *THEN*
          *ACCESSING* status of ON-LINE COMMUNICATIONS with
                  HOST computer.

   1 *IF*      ON-LINE COMMUNICATIONS available
   1 *THEN*
             *RETRIEVE* REQUEST from storage.
             *PREPARE* REQUEST for INQUIRY TRANSACTION.
             *VALIDATE* REQUEST on HOST computer.

(continued on figure 9c)


Flow Charts - Figures 5a through 5e

## Figure 9c

**CLIENT COMPUTER CONFIGURED FOR ON-LINE COMMUNICATIONS WITH AUTOMATIC VALIDATION PROCESSING**

(continued from figure 9b)

2 *IF*      REQUEST is VALID
2 *THEN*
          *STORE* VALID REQUEST for
                DISPENSE PROCESSING.
      2 *ELSE*
          *STORE* INVALID REQUEST for
                NOTIFICATION PROCESSING.
  1 *ELSE*
  1 *IF*      ON-LINE COMMUNICATIONS are not available
  1 *THEN*
        End VALIDATION PROCESSING.
0 *ELSE*
    End VALIDATION PROCESSING.

TESTING for INVALID REQUESTS in need of NOTIFICATION
        PROCESSING.

0 *IF*    Notification time is within allowable calling time window
0 *THEN*
      1 *IF*      A REQUEST exists
      1 *THEN*
          *RETRIEVE* INVALID REQUEST from storage.
          EXTRACT telephone number, VALIDATED status,
              original request time, and retry count from
              REQUEST.
          *PERFORM* NOTIFICATION telephone call with VALIDATED
              status informational MESSAGE.

          2 *IF*    MESSAGE was DELIVERED
          2 *THEN*
              *INCREMENT* message delivery attempt counter.
              *STORE* message DELIVERED status for
                  REPORT PROCESSING.
          2 *ELSE*

(continued on figure 9d)

Flow Charts - Figures 5a through 5e

### Figure 9d

**CLIENT COMPUTER CONFIGURED FOR ON-LINE COMMUNICATIONS WITH AUTOMATIC VALIDATION PROCESSING**

(continued from figure 9c)

2 *IF*     MESSAGE is DELIVERABLE
2 *THEN*
          *INCREMENT* message delivery attempt counter.
          *STORE* message NOT DELIVERED status for
               future NOTIFICATION PROCESSING.

2 *ELSE*
          *INCREMENT* message delivery attempt counter.
          *STORE* message NOT DELIVERABLE status for
               REPORT PROCESSING.
1 *ELSE*
          End NOTIFICATION PROCESSING.
0 *ELSE*
          End NOTIFICATION PROCESSING.

Flow Charts - Figures 5a through 5e

Exhibit_____/____Page__52

US 6,728,684 B1

1

# ON-LINE PHARMACY AUTOMATED REFILL SYSTEM

## CROSS-REFERENCE OF RELATED APPLICATION

This application is a continuation application of Pending application Ser. No. 08/961,652, filed Oct. 31, 1997 now U.S. Pat. No. 5,970,462 entitled "On-line Pharmacy Automated Refill System".

## REFERENCE TO MICROFICHE APPENDIX

This application is not referenced in any microfiche appendix.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention is directed to an interactive computer request processing system. More particularly, the invention relates to the field of refilling patient prescriptions using telephone and computer equipment even if patient databank computer interactive communications are unavailable.

### 2. Background Art

Patients require health care services, such as prescription refills, from health care service provider organizations, such as pharmacies. These organizations often provide automated services to their patients to increase efficiency. Consequently, automated pharmacy technologies must be developed and advanced to provide such services. The resulting technology has become increasingly complex. Multiple layers of automated computer equipment are being placed between a patient and the health care provider's service. Therefore, multiple points of failure in such technology exist. Any point of failure can cause an automated system, such as an automated pharmacy prescription refill system, to be unavailable for use by a patient demanding the service if some component of the automated system has failed.

Existing automated pharmacy refill systems utilize an answering device to interact with a databank. The databank contains specific patient information including the status of prescriptions. A difficulty with such systems is that if the databank is unavailable to the answering device, the answering device is unable to perform prescription inquiries for the patient until such time as communication with the patient databank is re-established. If the patient databank computer's interactive communications are unavailable to the answering computer, the answering computer cannot perform prescription inquiries on demand for the patients since it requires interactive communication with the patient databank computer. Typically, when encountering this situation, callers are informed that services are unavailable. A caller must, therefore, end the call without being provided the needed service.

## SUMMARY OF THE INVENTION

Consequently, the primary objective of this invention is to allow a patient to request prescription refills on a client computer or answering computer regardless of whether interactive communications are possible with the patient databank computer. Interactive communications with the patient databank computer typically perform prescription refill inquiries and subsequent interpretation of an inquiry response. If the patient databank computer is unavailable, the client or answering computer accepts and stores patient refill requests until interactive communications with the patient databank computer are available. When interactive communications are re-established, the client computer retrieves refill requests from the local database and transmits inquiries to the patient databank computer for validation. The host computer checks each refill request to determine if the refill request is valid, i.e., if it is valid to refill the prescription. If the prescription is still active, the last fill date, the days supply and the grace period are used to determine when the prescription can be filled.

The invention presented herein is a means for allowing patients to request their prescription refills on demand even if the patient databank computer is unavailable for interactive communications with the client computer at the moment in time when the inquiry needs to be made. The invention consists of specific computer programming software algorithms and techniques, and also specific defined procedures performed by computer operators, which operate on a general purpose computer engineered and programmed for answering incoming telephone calls and performing pharmacy prescription refill processing.

More particularly, the invention enables patients using an ordinary telephone to place a telephone call that is answered by a client computer. The client computer collects from the calling patient specific information necessary to refill the patient's prescription, preferably by touch-tone input from the patient's phone. The client computer has interactive communications with a patient databank computer that contains specific patient information including the status of prescriptions. The client computer, using the collected patient information, queries the patient databank computer. The patient databank computer then returns a response with particular information about the patient's prescription. The information is then interpreted and the client computer informs the patient whether or not the prescription can be refilled. However, if the interactive communications link with the patient databank computer is unavailable, then the client computer collects the calling patient's specific information for future validation processing. The client computer then informs the patient that if the prescription refill is valid, the prescription will be available to the patient at some point in time.

In one embodiment of the invention, the client computer notifies the patient of the patient's refill status once interactive communications with the host computer have been re-established and the patient's request has been validated. In the notification step, the client computer extracts the telephone number and status associated with the request and attempts to contact the patient. The client computer then states whether the call was delivered for later reporting to an operator.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 depicts the on-line pharmacy automated refill system of the present invention.

FIG. 2 is a flow diagram depicting the off-line communications configuration of the client computer.

FIGS. 3a and 3b are flow diagrams depicting the on-line communications configuration of the client computer.

FIG. 4 is a flow diagram depicting the on-line communications configuration of the client computer with operator initiated validation processing.

FIGS. 5a, 5b, 5c, 5d and 5e are flow diagrams depicting the on-line communications configuration of the client computer with automatic validation and notification processing.

FIGS. 6a and 6b are flow diagrams depicting the on-line or off-line communications configuration of the client computer with manual notification processing.

US 6,728,684 B1

3

FIGS. 7a and 7b are summaries of the program used by the client computer when configured for on-line communications.

FIG. 8 is a summary of the program used by the client computer when configured for off-line communications.

FIGS. 9a, 9b, 9c and 9d are summaries of the program used by the client computer when configured for on-line communications with automatic validation and notification processing.

DETAILED DESCRIPTION OF THE
PREFERRED EMBODIMENTS

Before explaining the invention in detail, it is to be understood that the invention is not limited in its application to the specific details of the implementation of the software as used for automated prescription refill systems outlined in the following descriptions and charts. The invention is capable of other embodiments and of being practiced or carried out in many ways. It is understood that the phraseology and terminology employed herein is for the purpose of description and not limitation.

Referring to FIG. 1, the answering computer or client computer 10 is designed to answer incoming telephone calls from patient telephone 12 and accept information from patients. Client computer 10 uses a complex software program that executes during normal operations. The information is stored in data storage 14 for use in processing prescription refill requests. The patient databank computer or host computer 16 contains patient databank 18, which contains specific patient information, including the patient's prescription information. Client computer 10 and host computer 16 are interconnected using one or more communications links 20 that support interactive communications between the computers. Examples of communication links 20 that may be used include serial connections such as VT100s and VT320s for connecting a dumb terminal to a mainframe, but other means, such as LAN connections, may be used to communicate with host computer 16. It is noted that processes performed by client computer 10 are in theory parallel processes and not serial processes in spite of computer operating system functional limitations.

Interactive communications between client computer 10 and host computer 16 consist of defined messages that are sent and received between the computers. In general, client computer 10 sends a message (initiates a transaction) to host computer 16 and host computer 16 sends a message (completes a transaction) back to client computer 10. The sending and receiving of a defined set of messages will be referred to as a transaction. A transaction is initiated by client computer 10 which sends a defined initiator message to host computer 16. Host computer 16 responds predictably with respect to the particular initiator message by sending a defined response message back to client computer 10, thus completing the transaction.

In practice, client computer 10 preferably uses a specific initiator message to test the current interactive communications status with host computer 16 and also a specific initiator message to make prescription refill request inquiries. Host computer 16 sends specific response messages with respect to the specific initiator messages back to client computer 10 so that appropriate actions can be taken, such as informing the calling patient of his or her prescription status. If no response message is received by client computer 10 after an initiator message has been sent, interactive communications between host computer 16 and client computer 10 have been interrupted. Additionally, if a "hardware

4

status" such as a phone dial tone or other "hardware status" has been interrupted, then interactive communications between host computer 16 and client computer 10 have been interrupted. Client computer 10 will then assume that interactive communications are not available. Therefore, any attempts by client computer 10 to initiate a transaction with host computer 16 to determine if host computer 16 will respond appropriately for re-establishing interactive communications will be automatically suspended.

Interactive communications between client computer 10 and host computer 16 can be activated (on-line mode) or deactivated (off-line mode) by either client computer 10 or host computer 16.

When client computer 10 engages in interactive communications with host computer 16, client computer 10 is considered to be on-line with host computer 16. Conversely, when there is no interactive communication, client computer 10 is considered to be off-line from host computer 16.

An automated prescription refill system consists primarily of client computer 10 and host computer 16. Client computer 10 answers incoming telephone lines and interacts with patients over the telephone. Host computer 16 contains the patient information databank or patient database 18 and provides practically instantaneous information to client computer 10 using one or more interactive communication links that support the interactive communications, which consist of specific transactions. Client computer 10 possesses automated refill system software, known in the art, that causes client computer 10 to answer incoming telephone lines, interact with patients over the telephone to collect specific information, and manage interactive communications with host computer 16.

For interactive communications to occur between client computer 10 and host computer 16, host computer 16 must be operational and permit client computer 10 access. Client computer 10 does not control the on-line or off-line interactive communications capabilities of host computer 16, but can determine if interactive communications are on-line or off-line. In practice, the interactive communications capabilities of host computer 16 may not be available to client computer 10 for a variety of reasons. For example, a system operator of host computer 16 may be performing maintenance work, electrical storms may be disrupting communications links, power failures may occur, etc. During such times, client computer 10 has the capability to operate autonomously without interactive communications with host computer 16 by storing patient data such as patient identification numbers and prescription numbers. The patient is thus informed of the unvalidated refill request status.

In one embodiment, after communications have been re-established between client computer 10 and host computer 16 and a prescription request has been validated, client computer 10 performs a notification telephone call to the patient to inform the patient of the request status.

It is noted that, for the purposes of this application, "operator" is any entity capable of issuing a command, including humans, software processes, hardware processes, and other means.

Client computer 10 can automatically detect interactive communications loss (off-line detection) with host computer 16 without human intervention from a computer operator. Also, an operator can manually put communications off-line by issuing a command to client computer 10. Conversely, the operator can manually put communications on-line by issuing a command to client computer 10.

A software command referred to as the "host off command" can be issued by an operator. The "host off com-

Exhibit ___1___ Page ___54___

| 5 | 6 |

mand" configures client computer **10** to operate with the assumption that interactive communications with host computer **16** are unavailable. Client computer **10** then functions according to the configuration and does not expect nor require interactive communications with host computer **16** to exist.

A software command referred to as the "host on command" can be issued by an operator. The "host on command" configures client computer **10** to operate with the assumption that interactive communications with host computer **16** are unavailable. Client computer **10** then functions according to the configuration and does expect but does not require interactive communications with host computer **16** to exist.

Operator Specified Off-line Communications Scenario

Referring now to FIG. **2**, when client computer **10** is taken off-line from host computer **16** by an operator using the "host off command", represented by box **100**, client computer **10** is configured for off-line communications. The "host off command" executes a simple software program that sets configuration files to be read by client computer **10**. The operator must then execute the software of client computer **10**, represented by box **106**. Client computer **10** uses software to check for incoming telephone calls and perform other tasks as represented by boxes **112** and **118**. Client computer **10** answers incoming calls, represented by box **124**, and gives the caller various options for services, represented by box **130**, thereby continuing to collect specific request information from the patient. Examples of various options for services include pharmacy hours of operation and location, information on medications, numbers to contact in case of questions or an option to transfer to a live person. Client computer **10** then determines whether the caller has ended the telephone call or made an invalid selection as represented by box **136**. If so, client computer **10** ends the telephone call as represented by box **172**. Otherwise, client computer **10** queries whether the caller wants to request a refill, as represented by box **142**. The specific request information preferably consists of, but is not limited to: a variable length patient identification number, represented by box **148**; a variable length prescription number, represented by box **154**; and, optionally, a variable length telephone number, credit card number or other information. The specific request information is stored locally in data storage **14** of client computer **10**.

Client computer **10** gives the outward seamless appearance to the patient that the refill system is fully operational. This appearance is maintained even though interactive communications between client computer **10** and host computer **16** are not available for patient refill request inquiry transactions. The request information is stored on local database **14** of client computer **10** for future consideration when refill validation processing, as represented by box **160**. The caller is then informed of his or her unvalidated status, as represented by box **162**. "Unvalidated status" means that the prescription request has been accepted pending validation and will be processed if the request is found to be valid during validation processing. Prescription refill validation processing with host computer **16** will take place when on-line communications become available. After stored unvalidated refill requests are processed by either manual or automatic validation processing, refill requests determined to be valid are dispensed, whereas refill requests determined to be invalid are not dispensed, but are stored for notification processing. Both valid and invalid refill requests are considered to be validated, as opposed to unvalidated, after the validation process has been performed.

Finally, client computer **10** queries the caller whether the caller has another refill request as represented by box **166**. If so, client computer **10** will then obtain a new prescription number from the client as represented by box **154**; otherwise, client computer **10** ends the telephone call as represented by box **172**.

Operator Specified On-line Communications with Off-line Detection Scenario

Referring now to FIG. **3a**, to place client computer **10** on-line, an operator issues the "host on command", represented by box **200**. The operator must then execute the software of client computer **10**, represented by box **206**. The "host on command" executes a simple software program that sets configuration files to be read by client computer **10**. Client computer **10** checks for incoming telephone calls and performs other tasks as represented by boxes **212** and **218**. Client computer **10** answers incoming calls, represented by box **224**, and gives the caller various options for services, represented by box **230**, thereby continuing to collect specific request information from the patient.

Client computer **10** determines whether the caller has ended the telephone call or made an invalid selection as represented by box **236**. If so, client computer **10** ends the telephone call as represented by box **272**. Otherwise, client computer **10** queries whether the caller wants to request a refill as represented by box **242**.

When client computer **10** is on-line with host computer **16** and a patient calls client computer **10** and requests a prescription refill, client computer **10** performs off-line detection by using a verification transaction, a software method, or by monitoring statuses rendered from other communications-related hardware devices, as represented by box **244**. The verification transaction immediately determines, as represented by box **245**, whether interactive communications with host computer **16** are available to perform inquiries.

If interactive communications with host computer **16** are not available at that moment, i.e., host computer **16** is off-line, then off-line communications processing is initiated, represented by box **246**. Once engaged in off-line communications processing, client computer **10** collects specific request information from the patient, represented by boxes **248** and **254**, shown in FIG. **3b**. The specific request information preferably consists of, but is not limited to: a variable length patient identification number, represented by box **248**; a variable length prescription number, represented by box **254**; and, optionally, a variable length telephone number, credit card number or other information. Local database **14** of client computer **10** then stores the caller's request, as represented by box **260**, for validation processing when on-line communications with host computer **16** are restored. The caller is then informed of his or her unvalidated status, as represented by box **262**. Preferably, client computer **10** informs the caller of the unvalidated refill status with a message similar to, "if your prescription request is valid, it will be filled". Finally, client computer **10** will query whether the caller has another refill request, as represented by box **266**. If so, client computer **10** will then obtain a new prescription number from the client, as represented by box **254**. Otherwise, client computer **10** ends the telephone call, as represented by box **272**.

If client computer **10** determines, as represented by box **245** shown in FIG. **3a**, that interactive communications with host computer **16** are available, then on-line communications processing is initiated, represented by box **276**. Client

Exhibit __1__ Page __55__

US 6,728,684 B1

7

computer **10** functions according to the on-line configuration and thus expects interactive on-line communications with host computer **16** to exist. Once engaged in on-line communications processing, client computer **10** collects specific request information from the patient, represented by boxes **278** and **284** shown in FIG. **3b**. Client computer **10** then validates the caller's request with the host computer, as represented by box **286**. The caller is then informed of his or her validated refill request status, as represented by box **287**. Finally, client computer **10** will query the caller whether the caller has another refill request, as represented by box **296**. If so, client computer **10** will then obtain a new prescription number from the client computer, as represented by box **284**. Otherwise, client computer **10** ends the telephone call, as represented by box **272**.

### Validation Processing

Validation processing occurs manually or automatically at the discretion of the operator. Manual validation processing is performed by software commands issued by the operator. Automatic validation processing is performed automatically by a software process on client computer **10** when it is configured by the operator for on-line communications and automatic validation processing. To determine whether a refill request is valid, client computer **10** first determines whether the prescription is still valid. If the prescription is still valid, the last fill date, the days supply and grace period are used to determine when the prescription can be filled. Manual and automatic validation processing is discussed in detail below.

### Operator Initiated Validation Processing

When the operator has configured client computer **10** for off-line communications, then all requests are stored on client computer **10**, as was discussed in reference to FIG. **2**, wherein the procedure is represented by boxes **100–160**. However, in order to perform validation processing, on-line communications must be available. Therefore, referring now to FIG. **4**, the operator must configure the software using the "HOST ON" command for on-line communications, represented by box **300**. A command referred to as the "VALIDATE command" is then issued by the operator, represented by box **314**. The VALIDATE command utilizes a software program that client computer **10** executes during normal on-line operations, as discussed below.

The term "normal operations" refers to when client computer **10** is answering calls after the operator has either configured the client computer for on-line or off-line communications. The term "abnormal operations" refers to when on-line communications have been interrupted, off-line detection has occurred, and requests are being stored for validation processing. Validation processing is effected either manually using the VALIDATE command or automatically by software processes of the software program executing on client computer **10** when it is configured for on-line communications and configured for automatic validation processing.

Client computer **10** may be configured for off-line communications by the operator using the HOST-OFF command as discussed in reference to box **100**, FIG. **2**, or may be operated with off-line communications as the result of the off-line detection process as represented in boxes **245** and **246**, in FIG. **3a**.

The client computer may be configured for on-line communications by the operator using the HOST-ON command, as represented by box **300** and as discussed in reference to

8

box **200**, FIG. **3a**. The operator may then issue the VALIDATE command as represented by box **314** to perform validation processing before executing client computer **10** operations as represented by box **306**.

After the "VALIDATE command" is issued by the operator, client computer **10** determines, as represented by box **396**, whether stored requests exist. If no stored requests exist, then the operator executes the software of client computer **10**, represented by box **306**.

If stored requests do exist, then when client computer **10** is on-line with host computer **16**, client computer **10** performs off-line detection by using a verification transaction, a software method, or by monitoring statuses rendered from other communications-related hardware devices, as represented by box **344**. The verification transaction determines, as represented by box **345**, whether interactive communications with host computer **16** are available to perform inquiries.

If on-line communications with host computer **16** are not available, i.e., host computer **16** is off-line, then a communications failure between client computer **10** and host computer **16** exists. The operator is then notified of the communications failure between client computer **10** and host computer **16**, as represented by box **347**.

If client computer **10** determines, as represented by box **345**, that interactive communications with host computer **16** are available, then a refill request inquiry transaction is initiated from client computer **10** to host computer **16**, as represented by box **388**.

Client computer **10** then determines, as represented by box **390**, whether the client request is a valid request. A request that is validated by host computer **16** is stored on data storage **14** of client computer **10** as a valid pending refill request for dispense transaction processing, represented by box **392**. Conversely, invalid refill requests are stored on client computer **10** as invalid refill requests for manual or automated notification or report processing, as represented by box **394**. Valid refill requests are used in a dispense transaction to dispense the prescription refill on host computer **14**. After valid or invalid refill requests are stored, as represented by boxes **392** and **394**, client computer **10** then determines, as represented by box **396**, whether any additional stored requests exist.

### Automatic Validation Processing

It is noted that when the operator has configured the software of client computer **10** for on-line communications, as was discussed with reference to FIGS. **3a** and **3b**, wherein the procedure is represented by boxes **200–296**, the requests are stored on data storage **14** of client computer **10**, represented by box **260**. Referring now to FIG. **5b**, box **460** also represents the storage of requests on client computer **10**. However, box **460** represents that the requests are stored for validation processing when off-line detection has occurred, as shown in FIG. **5b**.

Referring now to FIG. **5a**, in order to perform validation processing, on-line communications must be available. To place client computer **10** on-line, an operator issues the "host on command", represented by box **400**. The operator preferably then executes the software of client computer **10**, represented by box **406**. The software of client computer **10** has preferably been configured to perform validation processing and notification processing. Client computer **10** checks for incoming telephone calls and performs other tasks as represented by boxes **412** and **418**. Such tasks include performing client computer validation processing, as

Exhibit ___1___ Page __56__

US 6,728,684 B1

**9**

represented by box **415**, discussed below, or client computer notification processing as represented by box **515**, also discussed below. Client computer **10** answers incoming calls, represented by box **424**, and gives the caller various options for services, represented by box **430**, thereby continuing to collect specific request information from the patient such as patient identification, patient prescription number, or other information. Examples of various options for services include pharmacy hours of operation and location, information on medications, numbers to contact in case of questions, or an option to transfer to a live person.

Client computer **10** determines whether the caller has ended the telephone call or made an invalid selection as represented by box **436**. If so, client computer **10** ends the telephone call as represented by box **472**. Otherwise, client computer **10** queries whether the caller wants to request a refill as represented by box **442**.

When client computer **10** is on-line with host computer **16** and a patient calls client computer **10** and requests a pre-scription refill, client computer **10** performs off-line detection by using a verification transaction, a software method, or by monitoring statuses rendered from other communications-related hardware devices, as represented by box **444**. The verification transaction determines, as represented by box **445**, whether interactive communications with host computer **16** are available to perform inquiries.

If interactive communications with host computer **16** are not available at that moment, i.e., host computer **16** is off-line, then off-line communications processing is initiated, represented by box **446**. Once engaged in off-line communications processing, client computer **10** collects specific request information from the patient, represented by boxes **448** and **454** shown on FIG. **5b**. The specific request information preferably consists of, but is not limited to: a variable length patient identification number, represented by box **448**; a variable length prescription number, represented by box **454**; and, optionally, a variable length telephone number, credit card number or other information. Client computer **10** then stores the caller's request on local database **14**, as represented by box **460**, for validation processing when on-line communications with host computer **16** are restored. The caller is then informed of his or her unvalidated refill request status, as represented by box **462**, with a message similar to, "if your request is valid, it will be filled". Finally, client computer **10** will query whether the caller has another refill request, as represented by box **466**. If so, client computer **10** will then obtain a new prescription number from the client, as represented by box **454**. Otherwise, client computer **10** ends the telephone call, as represented by box **472**.

When on-line communications are re-established and client computer **10** conducts validation processing, the refill requests that are determined to be valid are stored for dispense processing, and the refill requests that are determined to be invalid are stored for notification processing, as discussed below.

If client computer **10** determines, as represented by box **445** on FIG. **5a**, that interactive communications with host computer **16** are available, then on-line communications processing is initiated, represented by box **476**. Client computer **10** functions according to the on-line configuration and thus expects interactive on-line communications with host computer **16** to exist. Once engaged in on-line communications processing, client computer **10** collects specific request information from the patient, such as patient identification

**10**

number, patient prescription number, or other information, represented by boxes **478** and **484** on FIG. **5b**. Client computer **10** then validates the caller's request with the host computer, as represented by box **486**. The caller is then informed of his or her validated refill status, as represented by box **487**. Finally, client computer **10** queries the caller as to whether the caller has another refill request, as represented by box **496**. If so, client computer **10** then obtains a new prescription number from the client, as represented by box **484**. Otherwise, client computer **10** ends the telephone call, as represented by box **472**.

Now referring to FIG. **5c**, when the operator has configured client computer **10** for on-line communications with automatic validation processing, validation processing for client computer **10** is initiated, as represented by box **415**. Client computer **10** performs off-line detection by using a verification transaction, a software method, or by monitoring statuses rendered from other communications-related hardware devices, as represented by box **488**. The verification transaction determines, as represented by box **490**, whether interactive communications with host computer **16** are available to perform inquiries.

If on-line communications with host computer **16** are not available, i.e., host computer **16** is off-line, the client computer software processing is continued, as represented by box **410**.

If client computer **10** determines, as represented by box **490**, that interactive communications with host computer **16** are available, then an inquiry transaction is initiated from client computer **10** to host computer **16**, to determine whether any unvalidated requests are stored in data storage **14**, as represented by box **493**. If no unvalidated requests exist, the client computer software processing is continued, as represented by box **410**.

If client computer **10** determines, as represented by box **492**, that unvalidated requests are stored in data storage **14**, then the unvalidated requests are retrieved and an inquiry transaction is initiated from client computer **10** to host computer **16**, as represented by box **493**.

Client computer **10** then determines, represented by box **494**, whether the client request is a valid request. A request that is validated by host computer **16** is stored on client computer **10** for dispense transaction processing as a valid pending refill request, represented by box **495**. Conversely, invalidated refill requests are stored on client computer **10** as invalid refill requests for notification or report processing, as represented by box **497**. Valid refill requests are used in a dispense transaction to dispense the prescription refill on host computer **14**. Invalid refill requests are stored for notification processing, as discussed below. After invalid refill requests are stored, as represented by box **497**, client computer **10** then determines, as represented by box **492**, whether any additional stored unvalidated requests exist.

### Notification Processing

Once it is determined that the client computer **10** is not in communication with host computer **16** or the system is off-line, and requests for refills are received by client computer **10**, the requests are stored for validation processing, as represented by boxes **160** of FIG. **1**, **260** of FIG. **3b**, and **460** of FIG. **5b**.

Once on-line communication is re-established between client computer **10** and host computer **16**, client computer **10** may then perform the validation processing task as represented by box **415** of FIG. **5a** and shown in detail in FIG. **5c**, boxes **415** through **497**. At this point, the caller is unaware

Exhibit____1____Page 57

US 6,728,684 B1

**11**

of whether his or her refill request has been determined to be valid or invalid. Therefore, in another embodiment of the invention, client computer **10** performs notification processing as represented in box **515** of FIG. 5a and FIG. 5d.

Notification processing may be a manual or automated process. Manual notification processing is accomplished by using client computer **10** to produce a readable report that can be used by a technician for notifying the patients or any other business use.

A human operator can issue a notify command that will cause client computer **10** to perform automated notification processing. Automated notification processing uses some or all of the existing telephone lines and attempts to contact all patients whose refill requests are found to be invalid. The notify command initiates the process that determines whether any invalid refill requests exist.

In the preferred embodiment, client computer **10** determines whether invalid refill requests exist. Client computer **10** then extracts the telephone number and status associated with the request and attempts to contact the patient. The automatic notification process only executes within specified hours. Therefore, calls are only placed during hours specified in this program, for example, during normal business hours or during home evening hours.

Client computer **10** attempts to call the patient on the telephone and inform the patient of the invalid refill status as determined during validation processing. In the event that a call is busy or unanswered, client computer **10** attempts another call at a later time until a defined period of time has elapsed or a total number of attempts has reached a defined limit. If the defined period of time or a total number of attempts has reached a defined limit, the invalid refill request status is stored for reporting as "not delivered". If a time period or predetermined retry count is reached, the invalid refill request status is stored for reporting as "not deliverable". If a telephone company situation information tone (SIT Tone) is received, then the invalid refill request is stored for reporting as "undeliverable". If the call is answered by an answering machine, methods known in the art are employed to attempt to leave a message stating the invalid status of the refill request. If the message is successfully delivered then the invalid refill request status is stored for reporting as "delivered". Finally, if a call is answered by a patient, a message stating the invalid status of the refill request is given to the patient with an option to repeat the message or to transfer to a technician. Additionally, other appropriate options may be given. If the message is delivered, then an invalid request status is stored for reporting as "delivered".

Whether the call was "not delivered," "delivered," or "undeliverable," the call disposition is stored. The call disposition reflects whether the call was busy, or if there was no answer, SIT tones, answering machine, a live patient, etc.

In the preferred embodiment, software processes run by client computer **10** have components that may perform report processing. Some reports are automatically generated and other reports may be generated as requested by an operator. A report may be produced in a computer readable format for use by another process or the report may be in a human readable form that could be used by a technician.

### Client Computer Configured for On-Line Communications with Automatic Notification Processing

Referring now to FIG. 5d, client computer **10** first determines whether the current time is within allowable calling

**12**

hours as represented by box **525**. If not, client computer **10** continues the software processing tasks as represented in box **410**. If the current time is within allowable calling hours, then client computer **10** determines whether any stored invalid refill requests exist, as represented by box **535**. If not, then client computer **10** continues software processing tasks as represented by box **410**.

If stored invalid refill requests do exist, then client computer **10** obtains an invalid refill request from local database **14**. Client computer **10** then extracts the original telephone number, original request time and validated status from the invalid request as represented in box **545**. Client computer **10** then determines whether it is timely to deliver a notification message by assessing the elapsed time since a previous refill request was made, e.g., if a predetermined period of time has elapsed then no further notification messages will be issued. Client computer **10** preferably additionally determines whether a retry count is below an established limit, as represented by box **555**.

If it is determined that the notification message is untimely or a retry count is above an acceptable limit, then a message delivery counter is incremented and the refill request is assigned a "not deliverable" message status for report processing as represented by box **595**. If the notification message is determined to be timely and the retry count is below an acceptable limit as represented by box **555**, then client computer **10** performs a notification telephone call function by attempting delivery of an invalid request message to the patient as represented by box **565**. Examples of invalid request messages include: "This prescription is expired"; "This prescription is discontinued"; "It is too early to fill this prescription. Please call back after 'an appropriate date'"; "No refills are available"; "This prescription cannot be filled"; or other appropriate messages. The notification telephone call function is represented by box **565** and described in greater detail below, and is represented in greater detail by boxes **610** through **687** in FIG. 5e. Box **565** also appears as "enter" and "exit" boxes in FIG. 5e to illustrate that boxes **610** through **687** represent box **565** in greater detail.

Referring back to FIG. 5d, the process for performing client computer notification processing is set forth. Client computer **10** then determines whether the notification message was delivered, as represented by box **575**.

If client computer **10** determines that the notification message was delivered, as represented by box **575**, then client computer **10** increments a message delivery attempt counter and stores a delivered message status for report processing, as represented by box **580**. Client computer **10** then continues client computer software processing tasks as represented by box **410**.

If client computer **10** determines that the notification message is deliverable, as represented by box **585**, then client computer **10** increments the message delivery attempt counter and stores "not delivered" message status for report processing and stores the invalid request for future retrieval by client computer **10** in future attempts at notification as represented by box **590**. Client computer **10** then continues software processing tasks as represented by box **410**.

If the notification message was determined by client computer **10** to have not been delivered, as represented by box **575**, then client computer **10** determines whether the notification message was deliverable as represented by box **585**. A preferred method of determining whether a message was deliverable is made by at least one of the series of tests represented by boxes **630** through **680** in FIG. 5e. If client

Exhibit____1____Page___58___

US 6,728,684 B1

**13**

computer **10** determines that the notification message is not deliverable, as represented by box **585**, then client computer **10** increments the message delivery counter and stores a "not deliverable" message status for report processing, as represented by box **595**.

The notification telephone call function and determination of whether a message is "deliverable", as represented by boxes **565**, **575** and **585** in FIG. 5*d*, is shown in greater detail in FIG. 5*e*. To perform the notification telephone call function represented by box **565** in FIG. 5*d*, the client computer **10** first determines whether a telephone line is available as represented by box **610** in FIG. 5*e*. If a telephone line is determined to not be available, then client computer **10** determines that the notification message was "not delivered", as represented by box **617** in FIG. 5*e*. Call progress status, such as "not delivered" status, is assigned to the refill request. If client computer **10** determines that the telephone line is available, as represented by box **610**, then client computer **10** dials the patient's telephone number as represented by box **620**. Client computer **10** then determines whether the answering party is a human patient as represented by box **630**. If the answering patient is a human party, then the client computer plays an "invalid refill request notification" message to the patient, as represented in box **633**.

In the preferred embodiment, client computer **10** allows the answering party to transfer to personnel, to repeat the message, or to engage other options, as represented by box **635**. Client computer **10** then indicates that the message was delivered, as represented by box **637** and returns to the notification process as represented by "exit" box **565** in FIG. 5*e*.

If client computer **10** determines that a human patient has not answered the phone, as represented by box **630**, client computer **10** then determines whether an electronic answering device has answered the phone, as known in the art, and represented by box **640**. If it is determined that an electronic answering device has answered the phone, as represented by box **640**, then client computer **10** plays an "invalid refill request" notification message to be recorded by the answering device as indicated by box **643**. Client computer **10** then indicates that the message was delivered as indicated by box **647** and returns to the notification process as indicated by box **565** in FIG. 5*e*.

If client computer **10** determines that an electronic answering device has not answered the phone, as represented by box **640**, then client computer **10** checks to determine if the line is busy as indicated by box **650**. If it is determined that the line is busy, then client computer **10** indicates that the message was not delivered, as indicated in box **657**. Client computer **10** then returns to the notification process, as indicated in box **565** in FIG. 5*e*.

If client computer **10** determines that there was no busy signal, as represented by box **650**, then client computer **10** checks to determine whether there is a ring with no answer, as represented by box **660**. If it is determined by the test represented by box **660** that there is a ring and no answer, then client computer **10** indicates that the message was not delivered, as indicated by box **657**, and returns to the notification process as represented in box **565** in FIG. 5*e*.

If client computer **10** determines that it is not the case that there is a ring with no answer as indicated by box **660**, then client computer **10** checks to determine whether there is no ring back as indicated by box **670**. If there is no ring back, then client computer **10** indicates that the message was not delivered as represented by box **657** and returns to notification process as represented by box **565** in FIG. 5*e*.

**14**

If it is not the case that there is no ring back as indicated in box **670**, then client computer **10** determines whether there is a situation information tone (SIT tone) as indicated in box **680**. If there is a SIT tone, client computer **10** then indicates that the message was undeliverable, as represented in box **687**. Client computer **10** then returns the call progress status to the notification process as indicated by boxes **687** and **565** in FIG. 5*e*.

Similarly, if there is no situation information tone, the message is still determined to be undeliverable since previous tests indicate that the message is undeliverable, as represented by boxes **630**, **640**, **650**, **660** and **670**. Therefore, client computer **10** determines that the message is undeliverable and returns the call progress status to a notification process as indicated in boxes **687** and **565** in FIG. 5*e*.

Client Computer Configured for On-Line or Off-Line Communications Using Manual Notification

Referring now to FIG. 6*a*, an operator issues a NOTIFY command, as indicated by box **814**. Client computer **10** then determines whether the current time is within allowable calling hours as represented by box **825**. If not, client computer **10** continues the software processing tasks as represented in box **810**. If the current time is within allowable calling hours, then client computer **10** determines whether any stored invalid refill requests exist, as represented by box **835**. If not, then client computer **10** continues software processing tasks as represented by box **810**.

If stored invalid refill requests do exist, then client computer **10** obtains an invalid refill request from local database **14**. Client computer **10** then extracts the original telephone number, original request time and validated status from the invalid request as represented in box **845**. Client computer **10** determines whether it is timely to deliver a notification message by assessing the elapsed time since a previous refill request was made, e.g., if a predetermined period of time has elapsed, then no further notification message will be issued. Client computer **10** additionally determines whether a retry count is below an established limit, as represented by box **855**.

If it is determined that the notification message is untimely or a retry count is above an acceptable limit, then a message delivery counter is incremented and the refill request is assigned a "not deliverable" message status for report processing as represented by box **895**. If the notification message is determined to be timely and the retry count is below an acceptable limit as represented by box **855**, then client computer **10** performs a notification telephone call function by attempting delivery of an invalid request message to the patient as represented by box **865**. The notification telephone call function represented by box **865** and described in greater detail below, is represented in greater detail by boxes **910** through **987** in FIG. 6*b*. Box **865** also appears as "enter" and "exit" boxes in FIG. 5*e* to illustrate that boxes **610** through **687** represent box **565** in greater detail.

Referring back to FIG. 6*a*, the process for performing manual client computer notification processing is set forth. Client computer **10** then determines whether the notification message was delivered, as represented by box **875**.

If client computer **10** determines that the notification message was delivered, as represented by box **875**, then client computer **10** increments a message delivery attempt counter and stores a delivered message status for report processing, as represented by box **880**. Client computer **10** then continues client computer software processing tasks as represented by box **810**.

Exhibit____1____Page____59____

US 6,728,684 B1

15

If client computer **10** determines that the notification message is deliverable, as represented by box **885**, then client computer **10** increments the message delivery attempt counter and stores "not delivered" message status for report processing and stores the invalid request for future retrieval by client computer **10** in future attempts at notification as represented by box **890**. Client computer **10** then continues software processing tasks as represented by box **810**.

If the notification message was determined by client computer **10** to have not been delivered, as represented by box **875**, then client computer **10** determines whether the notification message was deliverable as represented by box **885**. A preferred method of determining whether a message was deliverable is made by at least one of the series of tests represented by boxes **930** through **980** in FIG. **6b**. If client computer **10** determines that the notification message is not deliverable, as represented by box **885**, then client computer **10** increments the message delivery counter and stores a "not deliverable" message status for report processing, as represented by box **895**.

Referring now to FIG. **6b**, the notification telephone call function and determination of whether a message is "deliverable", as represented by boxes **865**, **875** and **885** in FIG. **6a**, is shown in greater detail. To perform the notification telephone call function represented by box **865** in FIG. **6a**, the client computer **10** first determines whether a telephone line is available as represented by box **910**, as shown in FIG. **6b**. If a telephone line is determined lo to not be available, then client computer **10** determines that the notification message was "not delivered", as represented by box **917**, as shown in FIG. **6b**. Call progress status, such as "not delivered" status, is assigned to the refill request. If client computer **10** determines that the telephone line is available, as represented by box **910**, then client computer **10** dials the patient's telephone number as represented by box **920**. Client computer **10** then determines whether the answering party is a human patient as represented by box **930**. If the answering party is a human party, then the client computer plays an "invalid refill request notification" message to the patient, as represented in box **933**.

In the preferred embodiment, client computer **10** allows the answering party to transfer to personnel, to repeat the message, or to engage other options, as represented by box **935**. Client computer **10** then indicates that the message was delivered, as represented by box **937** and returns to the notification process as represented by box **865**.

If client computer **10** determines that a human patient has not answered the phone, as represented by box **930**, client computer **10** then determines whether an electronic answering device has answered the phone, as known in the art, and represented by box **940**. If it is determined that an electronic answering device has answered the phone, as represented by box **940**, then client computer **10** plays an "invalid refill request" notification message to be recorded by the answering device as indicated by box **943**. Client computer **10** then indicates that the message was delivered as indicated by box **947** and returns to the notification process as indicated by box **865**.

If client computer **10** determines that an electronic answering device has not answered the phone, as represented by box **940**, then client computer **10** checks to determine if the line is busy as indicated by box **950**. If it is determined that the line is busy, then client computer **10** indicates that the message was not delivered, as indicated in box **957**. Client computer **10** then returns to the notification process, as indicated in "exit" box **865** in FIG. **6b**.

16

If client computer **10** determines that there was no busy signal, as represented by box **950**, then client computer **10** checks to determine whether there is a ring with no answer, as represented by box **960**. If it is determined by box **960** that there is a ring and no answer, then client computer **10** indicates that the message was not delivered, as indicated by box **957**, and returns to the notification process as represented in box **865** in FIG. **6b**.

If client computer **10** determines that it is not the case that there is a ring with no answer as indicated by box **960**, then client computer **10** checks to determine whether there is no ring back as indicated in box **970**. If there is no ring back, then client computer **10** indicates that the message was not delivered as represented by box **957** and returns to the notification process as represented by box **865** in FIG. **6b**.

If it is not the case that there is no ring back as indicated in box **970**, then client computer **10** determines whether there is a situation information tone (SIT tone) as indicated in box **980**. If there is a SIT tone, client computer **10** then indicates that the message was undeliverable, as represented in box **987**. Client computer **10** then returns the call progress status to the notification process as indicated by boxes **987** and **865** in FIG. **6b**. Similarly, if there is no situation information tone, the message is still determined to be undeliverable since previous tests indicate that the message is undeliverable, as represented by boxes **930**, **940**, **950**, **960** and **970**. Therefore, client computer **10** determines that the message is undeliverable and returns the call progress status to a notification process as indicated in boxes **987** and **865** in FIG. **6b**.

Whereas, the present invention has been described in relation to the drawings attached hereto, it should be understood that other and further modifications, apart from those shown or suggested herein, may be made within the spirit and scope of this invention.

What is claimed is:

1. A method for processing requests for prescription refills between one or more client computers and a host computer, comprising the steps of:

receiving a request for a prescription refill from a caller, said receiving of said request being facilitated by a client computer;

storing said request until on-line communications with a host computer are established, said storing of said request being facilitated by a first client computer storage means;

establishing a communication link between said client computer and said host computer, said establishing of said communication link being facilitated by a communication network; and

processing said request between said client computer and said host computer, said processing of said request being facilitated first client computer code segment and a first host code segment.

2. The method of claim **1**, wherein said step of receiving a request is further defined as:

answering an incoming telephone call from a caller, said answering of said incoming telephone call being facilitated by a client computer; and

receiving a request for a prescription refill from said caller.

3. The method of claim **1**, wherein said step of processing said request is further defined as:

attempting to validate said request by comparing said request with patient information stored in a patient information databank; and

Exhibit ___1___ Page ___60___

US 6,728,684 B1

17

if said request is a valid request, processing said valid request for dispensing, said processing of said valid request being facilitated by a dispensing transaction process.

**4.** The method of claim **3**, wherein said patient information databank is stored within said client computer and said step of validating is preformed when communications between said client computer and said host computer are off-line.

**5.** The method of claim **3**, wherein said patient information databank is stored within said host computer and said step of validating is preformed when communications between said client computer and said host computer are on-line.

**6.** The method of claim **3**, further comprising a step of storing said validated request for dispense processing, said storing of said validated request being facilitated by a client computer storage means.

**7.** The method of claim **3**, further comprising the step of storing said invalidated requests for notification processing, said storing of said validated request being facilitated by a client computer storage means.

**8.** A computer program embodied on computer-readable medium having a computer readable program code embodied in said medium for effecting a method of processing requests for prescription refills between at least one client computer and a host computer, comprising:

a code segment for receiving a request for a prescription refill from a caller;

a code segment for storing said request until on-line communications with a host computer is established;

a code segment for establishing a communication link between said client computer and said host computer; and

a code segment for processing said request between said client computer and said host computer.

18

**9.** The computer of claim **8**, wherein said a code segment for receiving said request is further defined as:

a code segment for answering an incoming telephone call from a caller; and

a code segment for receiving an audible request for a prescription refill from said caller.

**10.** The computer of claim **8**, wherein said a code segment for receiving said request is further defined as:

a code segment for attempting to validate said request by comparing said request with patient information stored in a patient information databank; and

if said request is a valid request, a code segment for processing said valid request for dispensing.

**11.** The computer of claim **8**, further comprising:

a code segment for storing said patient information databank within said client computer; and

a code segment for causing said attempt to validate said request between said client computer and said host computer to be facilitated when communications are off-line.

**12.** The computer of claim **8**, further comprising:

a code segment for storing said patient information databank within said client computer; and

a code segment for causing said attempt to validate said request between said client computer and said host computer to be facilitated when communications are on-line.

**13.** The computer of claim **8**, further comprising a code segment for storing within said client computer said validated request for dispense processing.

**14.** The computer of claim **8**, further comprising a code segment for storing within said client computer said invalidated requests for notification processing.

* * * * *

Exhibit___ 1 __ Page __ 61

**EXHIBIT B:**
**COMPUFILL'S COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

FILED

MAY 2 0 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1 HENNIGAN DORMAN LLP
RODERICK G. DORMAN (SBN 96908)
2 dormanr@hdlitigation.com
LAWRENCE M. HADLEY (SBN 157728)
3 hadleyl@hdlitigation.com
865 South Figueroa Street, Suite 2900
4 Los Angeles, California 90017
(213) 694-1200 - Telephone
5 (213) 694-1234 - Facsimile

6 Attorneys for Plaintiff CompuFill, LLC

7

8 UNITED STATES DISTRICT COURT

9 SOUTHERN DISTRICT OF CALIFORNIA

10

11 COMPUFILL, LLC                          ) Case No. '11 CV 1 1 1 4 LAB BGS
                                           )
12                      Plaintiff,         )
                                           ) **COMPLAINT FOR PATENT**
13 vs.                                     ) **INFRINGEMENT**
                                           )
14 WALGREEN CO.; CVS CAREMARK              ) **DEMAND FOR JURY TRIAL**
   CORPORATION; WAL-MART                   )
15 STORES, INC.; TARGET                    )
   CORPORATION; COSTCO                     )
16 WHOLESALE CORPORATION                   )
                                           )
17                      Defendants.        )
                                           )

18

19

20

21

22

23

24

25

26

27

28

iManage\1749854.1.

Exhibit 1 Page 63

COMPLAINT

For its Complaint against WALGREEN CO.; CVS CAREMARK CORPORATION; WAL-MART STORES, INC.; TARGET CORPORATION; COSTCO WHOLESALE CORPORATION (collectively, "Defendants"), Plaintiff COMPUFILL, LLC ("Plaintiff" or "CompuFill") alleges as follows:

## THE PARTIES

1.     Plaintiff CompuFill, LLC is a limited liability company duly organized and existing under the laws of the State of California, with its principal place of business at 535 B Street, Suite 1500, San Diego, California 92101. Plaintiff is the owner, by assignment, of all right, title and interest to U.S. Patent No.6,728,684.

2.     Defendant Walgreen Co. ("Walgreen") is a corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business at 300 Wilmot Road, Deerfield, Illinois 60015. Defendant Walgreen's registered agent for service of process in California is The Prentice-Hall Corporation System, Inc., 2730 Gateway Oaks Dr Ste 100 Sacramento, CA 95833-3503.

3.     Defendant CVS Caremark Corporation ("CVS") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 1 CVS Drive, Woonsocket, R.I. 02895. Defendant CVS's registered agent for service of process is CT Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

4.     Defendant Wal-Mart Stores, Inc. ("Walmart") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 702 Southwest 8th Street, Bentonville, Arkansas 72716-0215. Defendant Walmart's registered agent for service of process in California is CT Corporation System, 818 W 7th St Los Angeles, CA 90017-3407.

5.     Defendant Target Corporation ("Target") is a corporation duly organized and existing under the laws of the State of Minnesota, with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant Target's

**COMPLAINT**

iManage\1749854.1

1  registered agent for service of process in California is CT Corporation System, 818 W

2  7th St Los Angeles, CA 90017-3407.

3       6.     Defendant Costco Wholesale Corporation ("Costco") is a corporation

4  duly organized and existing under the laws of the State of Washington, with its

5  principal place of business at 999 Lake Drive, Issaquah, Washington 98027.

6  Defendant Costco's registered agent for service of process in California is Walter

7  Craig Jelinek, 4500 W Shaw Ave., Fresno, CA 93722-6200.

8  <u>**NATURE OF THE ACTION**</u>

9       7.     In this civil action, Plaintiff seeks damages against Defendants for acts of

10  patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1

11  *et seq.*

12  <u>**JURISDICTION AND VENUE**</u>

13       8.     This Court has subject matter jurisdiction of such federal question claims

14  pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15       9.     Venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b), in that the acts

16  and transactions complained of herein were conceived, carried out, made effective, or

17  had effect within the State of California and within this district, among other places.

18  On information and belief, Defendants conduct business activities in this judicial

19  district including regularly doing or soliciting business, engaging in conduct and/or

20  deriving substantial revenue from goods and services provided to consumers in the

21  State of California and in this district.

22       10.    On information and belief, this Court has personal jurisdiction over each

23  Defendant. Each Defendant conducts continuous and systematic business in

24  California and in this district by, among other things, making an interactive telephonic

25  prescription refill service available for use in this State and in this district.

26

27

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR**

**DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

11.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1-10 of this Complaint as though fully set forth herein.

12.    Plaintiff CompuFill is the owner by assignment of the entire right, title, and interest, including the right to enforce U.S. Patent Number 6,728,684, entitled "On-Line Pharmacy Automated Refill System" ("the '684 patent"). A true and correct copy of the '684 patent is attached as Exhibit A and incorporated herein by reference.

13.    Defendant Walgreen has directly infringed and continues to directly infringe the '684 patent by making, using, selling, and/or offering for sale its interactive telephonic prescription refill system, which can be accessed by calling (415) 626-9972. The system embodies and/or otherwise practices one or more of the claims of the '684 patent.

14.    Defendant CVS has directly infringed and continues to directly infringe the '684 patent by making, using, selling, and/or offering for sale its interactive telephonic prescription refill system, which can be accessed by calling (415) 243-0273. The system embodies and/or otherwise practices one or more of the claims of the '684 patent.

15.    Defendant Walmart has directly infringed and continues to directly infringe the '684 patent by making, using, selling, and/or offering for sale its interactive telephonic prescription refill system, which can be accessed by calling (510) 430-9723. The system embodies and/or otherwise practices one or more of the claims of the '684 patent.

16.    Defendant Target has directly infringed and continues to directly infringe the '684 patent by making, using, selling, and/or offering for sale its interactive telephonic prescription refill system, which can be accessed by calling (626) 584-

**COMPLAINT**

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

1    2963.  The system embodies and/or otherwise practices one or more of the claims of

2    the '684 patent.

3         17.   Defendant Costco has directly infringed and continues to directly

4    infringe the '684 patent by making, using, selling, and/or offering for sale its

5    interactive telephonic prescription refill system, which can be accessed by calling

6    (626) 289-7164.  The system embodies and/or otherwise practices one or more of the

7    claims of the '684 patent.

8         18.   As a direct and proximate result of Defendants' direct infringement of

9    the '684 patent, Plaintiff has been and continues to be damaged in an amount yet to be

10   determined.

11   **SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR**

12   **INDUCING DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

13        19.   Plaintiff incorporates herein by reference the allegations set forth in

14   paragraphs 1-18 of this Complaint as though fully set forth herein.

15        20.   On information and belief, Defendant Walgreen has indirectly infringed

16   and continues to indirectly infringe the '684 patent by actively inducing direct

17   infringement by other persons – specifically, customers and partners of Walgreen –

18   who make, use, sell or offer for sale its interactive telephonic prescription refill

19   system, which embodies and/or otherwise practices one or more of the claims of the

20   '684 patent – when Defendant Walgreen had knowledge of the '684 Patent and knew

21   or should have known that its actions would induce direct infringement by others and

22   intended that their actions would induce direct infringement by others.

23        21.   On information and belief, Defendant CVS has indirectly infringed and

24   continues to indirectly infringe the '684 patent by actively inducing direct

25   infringement by other persons – specifically, customers and partners of CVS – who

26   make, use, sell or offer for sale its interactive telephonic prescription refill system,

27   which embodies and/or otherwise practices one or more of the claims of the '684

28   patent – when Defendant CVS had knowledge of the '684 Patent and knew or should

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

-5-

**COMPLAINT**

1   have known that its actions would induce direct infringement by others and intended

2   that their actions would induce direct infringement by others.

3        22.   On information and belief, Defendant Walmart has indirectly infringed

4   and continues to indirectly infringe the '684 patent by actively inducing direct

5   infringement by other persons – specifically, customers and partners of Walmart –

6   who make, use, sell or offer for sale its interactive telephonic prescription refill

7   system, which embodies and/or otherwise practices one or more of the claims of the

8   '684 patent – when Defendant Walmart had knowledge of the '684 Patent and knew

9   or should have known that its actions would induce direct infringement by others and

10  intended that their actions would induce direct infringement by others.

11       23.   On information and belief, Defendant Target has indirectly infringed and

12  continues to indirectly infringe the '684 patent by actively inducing direct

13  infringement by other persons – specifically, customers and partners of Target – who

14  make, use, sell or offer for sale its interactive telephonic prescription refill system,

15  which embodies and/or otherwise practices one or more of the claims of the '684

16  patent – when Defendant Target had knowledge of the '684 Patent and knew or

17  should have known that its actions would induce direct infringement by others and

18  intended that their actions would induce direct infringement by others.

19       24.   On information and belief, Defendant Costco has also indirectly

20  infringed and continues to indirectly infringe the '684 patent by actively inducing

21  direct infringement by other persons – specifically, customers and partners of Costco

22  – who make, use, sell or offer for sale its interactive telephonic prescription refill

23  system, which embodies and/or otherwise practices one or more of the claims of the

24  '684 patent – when Defendant Costco had knowledge of the '684 Patent and knew or

25  should have known that its actions would induce direct infringement by others and

26  intended that their actions would induce direct infringement by others.

27

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

**COMPLAINT**

iManage\1749854.1

Exhibit ___1___ Page __68__

1      As a direct and proximate result of Defendants' inducement of infringement of

2   the '684 patent, Plaintiff has been and continues to be damaged in an amount yet to be

3   determined.

4      **THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR**

5   **CONTRIBUTING TO THE INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

6      Plaintiff incorporates herein by reference the allegations set forth in paragraphs

7   1-24 of this Complaint as though fully set forth herein.

8      25.   On information and belief, Defendant Walgreen has contributorily

9   infringed and continues to contributorily infringe the '684 patent by providing non-

10  staple articles of commerce to others for use in an infringing system or method with

11  knowledge of the '684 patent and knowledge that these non-staple articles of

12  commerce are used as a material part of the claimed invention of the '684 patent.

13     26.   On information and belief, Defendant CVS has contributorily infringed

14  and continues to contributorily infringe the '684 patent by providing non-staple

15  articles of commerce to others for use in an infringing system or method with

16  knowledge of the '684 patent and knowledge that these non-staple articles of

17  commerce are used as a material part of the claimed invention of the '684 patent.

18     27.   On information and belief, Defendant Walmart has contributorily

19  infringed and continues to contributorily infringe the '684 patent by providing non-

20  staple articles of commerce to others for use in an infringing system or method with

21  knowledge of the '684 patent and knowledge that these non-staple articles of

22  commerce are used as a material part of the claimed invention of the '684 patent.

23     28.   On information and belief, Defendant Target has contributorily infringed

24  and continues to contributorily infringe the '684 patent by providing non-staple

25  articles of commerce to others for use in an infringing system or method with

26  knowledge of the '684 patent and knowledge that these non-staple articles of

27  commerce are used as a material part of the claimed invention of the '684 patent.

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

29.     On information and belief, Defendant Costco has contributorily infringed and continues to contributorily infringe the '684 patent by providing non-staple articles of commerce to others for use in an infringing system or method with knowledge of the '684 patent and knowledge that these non-staple articles of commerce are used as a material part of the claimed invention of the '684 patent.

30.     As a direct and proximate result of Defendants' contributory infringement of the '684 patent, Plaintiff has been and continues to be damaged in an amount yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.      For a judicial determination and declaration that Defendants have infringed and continue to infringe the '684 patent by making, using, importing, offering for sale, and/or selling its interactive telephonic prescription refill system;

2.      For a judicial determination and declaration that Defendants have induced, and continues to induce, the infringement of the '684 patent;

3.      For a judicial determination and declaration that Defendants have contributorily infringed, and continues to contributorily infringe, the '684 patent;

4.      For damages resulting from Defendants' past and present infringement of the '684 patent;

5.      For a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award of attorneys' fees and costs in this action;

6.      For an assessment of prejudgment interest; and

7.      For such other and further relief as the Court may deem just and proper under the circumstances.

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

DATED:     May 20, 2011          HENNIGAN DORMAN LLP


                                 By _____
                                         Lawrence M. Hadley

                                 Attorneys for Plaintiff, COMPUFILL, LLC

iManage\1749854.1

-9-                                                    **COMPLAINT**

Exhibit ___1___ Page __71__

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of

3 Civil Procedure as to all issues in this lawsuit.

4

5 DATED: May 20, 2011           HENNIGAN DORMAN LLP

6

7

8                   By                         
                             Lawrence M. Hadley

9                   Attorneys for Plaintiff COMPUFILL, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIGAN DORMAN LLP
LAWYERS
LOS ANGELES, CALIFORNIA

iManage\1749854.1

-10-

**COMPLAINT**

Exhibit 1 Page 72

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FAXED

FILED
MAY 2 0 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

'11 CV 1 1 1 4 LAB BGS

### I. (a) PLAINTIFFS
COMPUFILL, LLC

### DEFENDANTS
WALGREENS CO.; CVS CAREMARK CORPORATION; WAL-MART STORES, INC.; TARGET CORPORATION; COSTCO WHOLESALE CORPORATION

**(b)** County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Lake County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Hennigan Dorman LLP
Lawrence M. Hadley, Esq.
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
Telephone: (213) 694-1200

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange. |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 USC Section 1
Brief description of cause:
Patent Infringement

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE
May 20, 2011

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 16506  AMOUNT $350  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit 1 Page 73

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS026506
Cashier ID: kdelabar
Transaction Date: 05/20/2011
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
------------------------------------
CIVIL FILING FEE
 For: SAN DIEGO LEGAL SUPPORT SVCS
 Case/Party: D-CAS-3-11-CV-001114-001
 Amount:      $350.00
------------------------------------
CHECK
 Check/Money Order Num: 100635
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.

**EXHIBIT C:**
**COSTCO WHOLESALE'S ANSWER TO COMPUFILL'S COMPLAINT FOR**
**INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

20

Exhibit ____1____ Page __75__

1   CHARLES S. BARQUIST (CA SBN 133785)
    WENDY J. RAY (CA SBN 226269)
2   MORRISON & FOERSTER LLP
    555 West Fifth Street, Suite 3500
3   Los Angeles, CA 90013
    Telephone: 213.892.5200
4   CBarquist@mofo.com;
    WRay@mofo.com
5
    Attorneys for Defendant
6   COSTCO WHOLESALE CORPORATION

7

8                   UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  COMPUFILL, LLC                          Case No.  3:11-CV-01114-LAB-BGS

11                  Plaintiff,                    [Jury Trial Demanded]

12          v.                               **ANSWER OF COSTCO
                                             WHOLESALE CORPORATION
13  WALGREEN CO.; CVS PHARMACY, INC.;        TO FIRST AMENDED
    WAL-MART STORES, INC.; TARGET            COMPLAINT**
14  CORPORATION; COSTCO WHOLESALE
    CORPORATION
15
16                  Defendants.

17         Defendant Costco Wholesale Corporation, by and through its undersigned attorneys,

18  hereby demands a trial by jury on all issues so triable and hereby answers each of the numbered

19  paragraphs of plaintiff Compufill, LLC's First Amended Complaint for Patent Infringement.  All

20  allegations, averments, statements, and assertions that are not expressly admitted herein are

21  denied.

22                            **THE PARTIES**

23         1.      Costco lacks knowledge or information sufficient to form a belief as to the truth of

24  the allegations of paragraph 1, and therefore denies them.

25         2.      Costco lacks knowledge or information sufficient to form a belief as to the truth of

26  the allegations in Paragraph 2, and therefore denies them.

27

28

                                    1

3.     Costco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, and therefore denies them.

4.     Costco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4, and therefore denies them.

5.     Costco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5, and therefore denies them.

6.     Costco admits the allegations of paragraph 6.

## NATURE OF THE ACTION

7.     Costco admits that this civil action purports to seek damages for alleged acts of patent infringement.  Costco denies it has infringed the patent-in-suit.

## JURISDICTION AND VENUE

8.     Costco admits that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

9.     Costco admits that venue is proper in this district under 28 U.S.C. §§ 1391 and 1400.  Costco also admits that it conducts business activities in California and this judicial district.  As to the allegations in Paragraph 9 that relate to the other defendants in this action, Costco lacks information sufficient to form a belief as to such allegations, and therefore denies such allegations.  Except as expressly admitted, Costco denies the allegations in Paragraph 9.

10.     Costco does not contest personal jurisdiction.  As to the allegations in Paragraph 10 that relate to the other defendants in this action, Costco lacks information sufficient to form a belief as to such allegations and therefore denies such allegations.

## FIRST CLAIM FOR RELIEF

11.     Costco incorporates by reference its response to the allegations of Paragraphs 1-10 of the First Amended Complaint as if fully set forth herein.

12.     Costco lacks knowledge or information sufficient to form a belief as to the truth of the allegation that plaintiff Compufill is the owner by assignment of the entire right, title and interest, including the right to enforce U.S. Patent Number 6,728,684, entitled "On-Line

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF COSTCO WHOLESALE CORP.

la-1132258

Exhibit____1____Page____77____

1   Pharmacy Automated Refill System," and therefore denies it.  Costco admits that what appears to

2   be a copy of the '684 patent is attached to the First Amended Complaint as Exhibit A.

3        13.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

4   the allegations in Paragraph 13, and therefore denies them.

5        14.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

6   the allegations in Paragraph 14, and therefore denies them.

7        15.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

8   the allegations in Paragraph 15, and therefore denies them.

9        16.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

10  the allegations in Paragraph 16, and therefore denies them.

11       17.    Costco admits that its interactive telephonic prescription refill system can be

12  accessed by calling (626) 289-7164.  Except as expressly admitted, Costco denies each and every

13  allegation contained in Paragraph 17.

14       18.    Costco denies that Plaintiff has been and continues to be damaged as a direct and

15  proximate result of its alleged direct infringement of the '684 patent.  As to the allegations in

16  Paragraph 18 that relate to the other defendants in this action, Costco lacks information sufficient

17  to form a belief as to such allegations and therefore denies such allegations.

18                 **SECOND CLAIM FOR RELIEF**

19       19.    Costco incorporates by reference its response to the allegations of Paragraphs 1-18

20  of the First Amended Complaint as if fully set forth herein.

21       20.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

22  the allegations in Paragraph 20, and therefore denies them.

23       21.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

24  the allegations in Paragraph 21, and therefore denies them.

25       22.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

26  the allegations in Paragraph 22, and therefore denies them.

27       23.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

28  the allegations in Paragraph 23, and therefore denies them.

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF COSTCO WHOLESALE CORP.

la-1132258

Exhibit _____ 1 _____ Page _____ 78 _____

1    24.    Costco denies the allegations in Paragraph 24.

2    [unnumbered par.]    Costco denies that Plaintiff has been and continues to be damaged

3    as a direct and proximate result of its alleged inducement of infringement of the '684 patent.  As

4    to the allegations in this paragraph that relate to the other defendants in this action, Costco lacks

5    information sufficient to form a belief as to such allegations and therefore denies such allegations.

6                              **THIRD CLAIM FOR RELIEF**

7    [unnumbered par.]    Costco incorporates by reference its response to the allegations of

8    Paragraphs 1-24 of the First Amended Complaint as if fully set forth herein.

9    25.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

10   the allegations in Paragraph 25, and therefore denies them.

11   26.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

12   the allegations in Paragraph 26, and therefore denies them.

13   27.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

14   the allegations in Paragraph 27, and therefore denies them.

15   28.    Costco lacks knowledge or information sufficient to form a belief as to the truth of

16   the allegations in Paragraph 28, and therefore denies them.

17   29.    Costco denies the allegations in Paragraph 29.

18   30.    Costco denies that Plaintiff has been and continues to be damaged as a direct and

19   proximate result of its contributory infringement of the '684 patent.  As to the allegations in

20   Paragraph 30 that relate to the other defendants in this action, Costco lacks information sufficient

21   to form a belief as to such allegations and therefore denies such allegations.

22                           **RESPONSE TO PRAYER FOR RELIEF**

23   Costco denies that Plaintiff is entitled to any relief in this action and asks the Court to

24   deny any and all of the relief requested by Plaintiff in its First Amended Complaint with respect

25   to Costco.

26

27

28

4

la-1132258

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF COSTCO WHOLESALE CORP.

Exhibit___1___Page___79___

**ADDITIONAL DEFENSES**

Costco, without altering the applicable burdens of proof, asserts the following further defenses to the First Amended Complaint and the purported claims contained therein.

**First Additional Defense**
**(Failure to State a Claim)**

Plaintiff's claims for alleged infringement of the '684 Patent fail to state a claim upon which relief can be granted.

**Second Additional Defense**
**(Failure to Plead with Particularity)**

Plaintiff has failed to plead its induced infringement claim and its contributory infringement claim with sufficient particularity.

**Third Additional Defense**
**(Non-Infringement)**

Costco has not infringed, either literally or under the doctrine of equivalents, any claim of the '684 Patent, and it has not contributed to or induced the infringement of any claim of the '684 Patent.

**Fourth Additional Defense**
**(Invalidity)**

Each claim of the '684 Patent is invalid for failure to satisfy the conditions for patentability set forth by 35 U.S.C. §§ 101, 102, 103 and 112.

**Fifth Additional Defense**
**(Prosecution History Estoppel)**

The claims of the '684 Patent cannot be enforced against Costco under the doctrine of prosecution history estoppel.

**Sixth Additional Defense**
**(Equitable Defenses)**

On information and belief, Plaintiff's claims against Costco are barred, in whole or in part, under the equitable doctrines of laches and unclean hands.

**Seventh Additional Defense**
**(Non-infringing Alternatives)**

la-1132258

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF COSTCO WHOLESALE CORP.

Exhibit _____ Page _____ 80

1    Any claim by Plaintiff for damages is limited by the existence of non-infringing

2    alternatives to the '684 Patent.

3                          **Eighth Additional Defense**
                                **(Misjoinder)**
4
5    Plaintiff has misjoined the parties to this action.

6                          **Ninth Additional Defense**
                       **(Limitation on Recovery of Costs)**
7
     Plaintiff is precluded from seeking recovery of costs by 35 U.S.C. § 288.
8
9                          **Tenth Additional Defense**
                            **(Limitation on Damages)**
10
     Plaintiff is precluded from seeking damages by 35 U.S.C. § 287.
11
12                       **Eleventh Additional Defense**
                          **(Reservation of Rights)**
13    Costco specifically reserves the right to assert any and all defenses, affirmative or

14   otherwise, that may become available through information developed in discovery or otherwise.

15

16    WHEREFORE, Costco respectfully demands judgment on Plaintiff's First Amended

17   Complaint as follows:

18        A.    That Plaintiff takes nothing and is denied any relief whatsoever;

19        B.    That the First Amended Complaint be dismissed on the merits and with prejudice

20   with respect to Costco or any other persons in privity with Costco including without limitation

21   any of Costco's successors, assigns, agents, suppliers and customers;

22        C.    That the claims of the '684 Patent be declared to be not infringed by Costco;

23
24        D.    That the claims of the '684 Patent be declared to be invalid;

25        E.    That the '684 Patent be declared unenforceable;

26        F.    That Costco be awarded the costs incurred by it in connection with this action;

27

28

la-1132258

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF COSTCO WHOLESALE CORP.

Exhibit ___/___ Page ___81___

G.     That this case be deemed exceptional pursuant to 35 U.S.C. § 285, such that

Costco be awarded its reasonable attorneys' fees; and

H.     That Costco be awarded such other and further relief as the Court may deem just

and proper.

### JURY DEMAND

Costco demands a trial by jury on all issues so triable.

Dated: July 13, 2011

MORRISON & FOERSTER LLP
Charles S. Barquist
Wendy J. Ray


By:  /s/Charles S. Barquist
        CHARLES S. BARQUIST
        CBarquist@mofo.com

        Attorneys for Defendant
        COSTCO WHOLESALE
        CORPORATION

7

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF COSTCO WHOLESALE CORP.

la-1132258

Exhibit___/___ Page_82_

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on July 13, 2011 a true and correct copy of the foregoing was transmitted electronically through the Electronic Filing System of the United States District Court for the Southern District of California which, under Local Civil Rule 5.4(b)&(c), is believed to have sent notice of such filing, constituting service of the filed document, on all Filing Users, all of whom are believed to have consented to electronic service.

     Executed on July 13, 2011 at Los Angeles, California.


                       /s/Charles S. Barquist
                       Charles S. Barquist

CASE NO. 3:11-CV-01114-LAB-BGS
CERTIFICATE OF SERVICE

la-1132258

Exhibit_____1_____ Page___83___

**EXHIBIT D:**
**CVS PHARMACY'S ANSWER TO COMPUFILL'S COMPLAINT FOR**
**INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

21

1  CHARLES S. BARQUIST (CA SBN 133785)
   WENDY J. RAY (CA SBN 226269)
2  MORRISON & FOERSTER LLP
   555 West Fifth Street, Suite 3500
3  Los Angeles, CA 90013
   Telephone: 213.892.5200
4  CBarquist@mofo.com;
   WRay@mofo.com
5
   Attorneys for Defendant
6  CVS PHARMACY, INC.

7

8                  UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10 COMPUFILL, LLC                    Case No.  3:11-CV-01114-LAB-BGS

11            Plaintiff,             [Jury Trial Demanded]

12      v.                          **ANSWER OF CVS PHARMACY,
                                     INC. TO FIRST AMENDED
13 WALGREEN CO.; CVS PHARMACY, INC.; COMPLAINT**
   WAL-MART STORES, INC.; TARGET
14 CORPORATION; COSTCO WHOLESALE
   CORPORATION
15
              Defendants.
16

17       Defendant CVS Pharmacy, Inc., by and through its undersigned attorneys, hereby

18 demands a trial by jury on all issues so triable and hereby answers each of the numbered

19 paragraphs of plaintiff Compufill, LLC's First Amended Complaint for Patent Infringement.  All

20 allegations, averments, statements, and assertions that are not expressly admitted herein are

21 denied.

22                          **THE PARTIES**

23       1.      CVS lacks knowledge or information sufficient to form a belief as to the truth of

24 the allegations of paragraph 1, and therefore denies them.

25       2.      CVS lacks knowledge or information sufficient to form a belief as to the truth of

26 the allegations in Paragraph 2, and therefore denies them.

27

28

                                    1

3.     CVS denies that it is a corporation duly organized and existing under the laws of the State of Delaware.  CVS admits the remaining allegations of paragraph 3.

4.     CVS lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4, and therefore denies them.

5.     CVS lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5, and therefore denies them.

6.     CVS lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6, and therefore denies them.

## NATURE OF THE ACTION

7.     CVS admits that this civil action purports to seek damages for alleged acts of patent infringement.  CVS denies it has infringed the patent-in-suit.

## JURISDICTION AND VENUE

8.     CVS admits that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

9.     CVS admits that venue is proper in this district under 28 U.S.C. §§ 1391 and 1400.  CVS also admits that it conducts business activities in California and this judicial district.  As to the allegations in Paragraph 9 that relate to the other defendants in this action, CVS lacks information sufficient to form a belief as to such allegations, and therefore denies such allegations.  Except as expressly admitted, CVS denies the allegations in Paragraph 9.

10.     CVS does not contest personal jurisdiction.  As to the allegations in Paragraph 10 that relate to the other defendants in this action, CVS lacks information sufficient to form a belief as to such allegations and therefore denies such allegations.

## FIRST CLAIM FOR RELIEF

11.     CVS incorporates by reference its response to the allegations of Paragraphs 1-10 of the First Amended Complaint as if fully set forth herein.

12.     CVS lacks knowledge or information sufficient to form a belief as to the truth of the allegation that plaintiff Compufill is the owner by assignment of the entire right, title and interest, including the right to enforce U.S. Patent Number 6,728,684, entitled "On-Line

2

la-1131207

**Exhibit** _____ **Page** 86

1    Pharmacy Automated Refill System," and therefore denies it.  CVS admits that what appears to

2    be a copy of the '684 patent is attached to the First Amended Complaint as Exhibit A.

3        13.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

4    the allegations in Paragraph 13, and therefore denies them.

5        14.    CVS admits that its interactive telephonic prescription refill system can be

6    accessed by calling (415) 243-0273.  Except as expressly admitted, CVS denies each and every

7    allegation contained in Paragraph 14.

8        15.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

9    the allegations in Paragraph 15, and therefore denies them.

10       16.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

11   the allegations in Paragraph 16, and therefore denies them.

12       17.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

13   the allegations in Paragraph 17, and therefore denies them.

14       18.    CVS denies that Plaintiff has been and continues to be damaged as a direct and

15   proximate result of its alleged direct infringement of the '684 patent.  As to the allegations in

16   Paragraph 18 that relate to the other defendants in this action, CVS lacks information sufficient to

17   form a belief as to such allegations and therefore denies such allegations.

18                           **SECOND CLAIM FOR RELIEF**

19       19.    CVS incorporates by reference its response to the allegations of Paragraphs 1-18

20   of the First Amended Complaint as if fully set forth herein.

21       20.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

22   the allegations in Paragraph 20, and therefore denies them.

23       21.    CVS denies the allegations in Paragraph 21.

24       22.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

25   the allegations in Paragraph 22, and therefore denies them.

26       23.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

27   the allegations in Paragraph 23, and therefore denies them.

28

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF CVS PHARMACY, INC.

la-1131207

Exhibit____1____Page 87

1    24.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

2    the allegations in Paragraph 24, and therefore denies them.

3    [unnumbered par.]    CVS denies that Plaintiff has been and continues to be damaged as

4    a direct and proximate result of its alleged inducement of infringement of the '684 patent.  As to

5    the allegations in this paragraph that relate to the other defendants in this action, CVS lacks

6    information sufficient to form a belief as to such allegations and therefore denies such allegations.

7                              **THIRD CLAIM FOR RELIEF**

8    [unnumbered par.]    CVS incorporates by reference its response to the allegations of

9    Paragraphs 1-24 of the First Amended Complaint as if fully set forth herein.

10   25.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

11   the allegations in Paragraph 25, and therefore denies them.

12   26.    CVS denies the allegations in Paragraph 26.

13   27.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

14   the allegations in Paragraph 27, and therefore denies them.

15   28.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

16   the allegations in Paragraph 28, and therefore denies them.

17   29.    CVS lacks knowledge or information sufficient to form a belief as to the truth of

18   the allegations in Paragraph 29, and therefore denies them.

19   30.    CVS denies that Plaintiff has been and continues to be damaged as a direct and

20   proximate result of its contributory infringement of the '684 patent.  As to the allegations in

21   Paragraph 30 that relate to the other defendants in this action, CVS lacks information sufficient to

22   form a belief as to such allegations and therefore denies such allegations.

23                          **RESPONSE TO PRAYER FOR RELIEF**

24   CVS denies that Plaintiff is entitled to any relief in this action and asks the Court to deny

25   any and all of the relief requested by Plaintiff in its First Amended Complaint with respect to

26   CVS.

27

28

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF CVS PHARMACY, INC.

la-1131207

Exhibit____1____Page__88

**ADDITIONAL DEFENSES**

CVS, without altering the applicable burdens of proof, asserts the following further defenses to the First Amended Complaint and the purported claims contained therein.

**First Additional Defense**
**(Failure to State a Claim)**

Plaintiff's claims for alleged infringement of the '684 Patent fail to state a claim upon which relief can be granted.

**Second Additional Defense**
**(Failure to Plead with Particularity)**

Plaintiff has failed to plead its induced infringement claim and its contributory infringement claim with sufficient particularity.

**Third Additional Defense**
**(Non-Infringement)**

CVS has not infringed, either literally or under the doctrine of equivalents, any claim of the '684 Patent, and it has not contributed to or induced the infringement of any claim of the '684 Patent.

**Fourth Additional Defense**
**(Invalidity)**

Each claim of the '684 Patent is invalid for failure to satisfy the conditions for patentability set forth by 35 U.S.C. §§ 101, 102, 103 and 112.

**Fifth Additional Defense**
**(Prosecution History Estoppel)**

The claims of the '684 Patent cannot be enforced against CVS under the doctrine of prosecution history estoppel.

**Sixth Additional Defense**
**(Equitable Defenses)**

On information and belief, Plaintiff's claims against CVS are barred, in whole or in part, under the equitable doctrines of laches and unclean hands.

### Seventh Additional Defense
### (Non-infringing Alternatives)

Any claim by Plaintiff for damages is limited by the existence of non-infringing alternatives to the '684 Patent.

### Eighth Additional Defense
### (Misjoinder)

Plaintiff has misjoined the parties to this action.

### Ninth Additional Defense
### (Limitation on Recovery of Costs)

Plaintiff is precluded from seeking recovery of costs by 35 U.S.C. § 288.

### Tenth Additional Defense
### (Limitation on Damages)

Plaintiff is precluded from seeking damages by 35 U.S.C. § 287.

### Eleventh Additional Defense
### (Reservation of Rights)

CVS specifically reserves the right to assert any and all defenses, affirmative or otherwise, that may become available through information developed in discovery or otherwise.

WHEREFORE, CVS respectfully demands judgment on Plaintiff's First Amended Complaint as follows:

    A.     That Plaintiff takes nothing and is denied any relief whatsoever;

    B.     That the First Amended Complaint be dismissed on the merits and with prejudice with respect to CVS or any other persons in privity with CVS including without limitation any of CVS' successors, assigns, agents, suppliers and customers;

    C.     That the claims of the '684 Patent be declared to be not infringed by CVS;

    D.     That the claims of the '684 Patent be declared to be invalid;

    E.     That the '684 Patent be declared unenforceable;

    F.     That CVS be awarded the costs incurred by it in connection with this action;

6

G.     That this case be deemed exceptional pursuant to 35 U.S.C. § 285, such that CVS be awarded its reasonable attorneys' fees; and

H.     That CVS be awarded such other and further relief as the Court may deem just and proper.

## JURY DEMAND

CVS demands a trial by jury on all issues so triable.

Dated: July 13, 2011

MORRISON & FOERSTER LLP
Charles S. Barquist
Wendy J. Ray


By:  /s/Charles S. Barquist
      CHARLES S. BARQUIST
      CBarquist@mofo.com

      Attorneys for Defendant
      CVS PHARMACY, INC.

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF CVS PHARMACY, INC.

Exhibit ___1___ Page___91___

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on July 13, 2011 a true and correct copy of the foregoing was transmitted electronically through the Electronic Filing System of the United States District Court for the Southern District of California which, under Local Civil Rule 5.4(b)&(c), is believed to have sent notice of such filing, constituting service of the filed document, on all Filing Users, all of whom are believed to have consented to electronic service.

    Executed on July 13, 2011 at Los Angeles, California.


                    /s/Charles S. Barquist
                    Charles S. Barquist

la-1131207

CASE NO. 3:11-CV-01114-LAB-BGS
CERTIFICATE OF SERVICE

Exhibit _____/_____ Page _92_

**EXHIBIT E:**
**TARGET CORPORATION'S ANSWER TO COMPUFILL'S COMPLAINT FOR**
**INFRINGEMENT OF U.S. PATENT NO. 6,728,684**

22

1  CHARLES S. BARQUIST (CA SBN 133785)
   WENDY J. RAY (CA SBN 226269)
2  MORRISON & FOERSTER LLP
   555 West Fifth Street, Suite 3500
3  Los Angeles, CA 90013
   Telephone: 213.892.5200
4  CBarquist@mofo.com;
   WRay@mofo.com
5
   Attorneys for Defendant
6  TARGET CORPORATION

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10 COMPUFILL, LLC                    Case No. 3:11-CV-01114-LAB-BGS

11             Plaintiff,            [Jury Trial Demanded]

12        v.                         **ANSWER OF TARGET**
                                     **CORPORATION TO FIRST**
13 WALGREEN CO.; CVS PHARMACY, INC.; **AMENDED COMPLAINT**
   WAL-MART STORES, INC.; TARGET
14 CORPORATION; COSTCO WHOLESALE
   CORPORATION
15
16             Defendants.

17        Defendant Target Corporation, by and through its undersigned attorneys, hereby demands

18 a trial by jury on all issues so triable and hereby answers each of the numbered paragraphs of

19 plaintiff Compufill, LLC's First Amended Complaint for Patent Infringement.  All allegations,

20 averments, statements, and assertions that are not expressly admitted herein are denied.

21                          **THE PARTIES**

22        1.      Target lacks knowledge or information sufficient to form a belief as to the truth of

23 the allegations of paragraph 1, and therefore denies them.

24        2.      Target lacks knowledge or information sufficient to form a belief as to the truth of

25 the allegations in Paragraph 2, and therefore denies them.

26        3.      Target lacks knowledge or information sufficient to form a belief as to the truth of

27 the allegations in Paragraph 3, and therefore denies them.

28

                                    1

1       4.      Target lacks knowledge or information sufficient to form a belief as to the truth of

2  the allegations of Paragraph 4, and therefore denies them.

3       5.      Target admits the allegations of paragraph 5.

4       6.      Target lacks knowledge or information sufficient to form a belief as to the truth of

5  the allegations of Paragraph 6, and therefore denies them.

6                  **NATURE OF THE ACTION**

7       7.      Target admits that this civil action purports to seek damages for alleged acts of

8  patent infringement.  Target denies it has infringed the patent-in-suit.

9                  **JURISDICTION AND VENUE**

10      8.      Target admits that the Court has subject matter jurisdiction over this action under

11  28 U.S.C. §§ 1331 and 1338.

12      9.      Target admits that venue is proper in this district under 28 U.S.C. §§ 1391 and

13  1400.  Target also admits that it conducts business activities in California and this judicial district.

14  As to the allegations in Paragraph 9 that relate to the other defendants in this action, Target lacks

15  information sufficient to form a belief as to such allegations, and therefore denies such

16  allegations.  Except as expressly admitted, Target denies the allegations in Paragraph 9.

17     10.      Target does not contest personal jurisdiction.  As to the allegations in Paragraph 10

18  that relate to the other defendants in this action, Target lacks information sufficient to form a

19  belief as to such allegations and therefore denies such allegations.

20                  **FIRST CLAIM FOR RELIEF**

21     11.      Target incorporates by reference its response to the allegations of Paragraphs 1-10

22  of the First Amended Complaint as if fully set forth herein.

23     12.      Target lacks knowledge or information sufficient to form a belief as to the truth of

24  the allegation that plaintiff Compufill is the owner by assignment of the entire right, title and

25  interest, including the right to enforce U.S. Patent Number 6,728,684, entitled "On-Line

26  Pharmacy Automated Refill System," and therefore denies it.  Target admits that what appears to

27  be a copy of the '684 patent is attached to the First Amended Complaint as Exhibit A.

28

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF TARGET CORP.

la-1132254

Exhibit _1_ Page _95_

13.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore denies them.

14.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies them.

15.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies them.

16.     Target admits that its interactive telephonic prescription refill system can be accessed by calling (626) 584-2963.  Except as expressly admitted, Target denies each and every allegation contained in Paragraph 16.

17.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore denies them.

18.     Target denies that Plaintiff has been and continues to be damaged as a direct and proximate result of its alleged direct infringement of the '684 patent.  As to the allegations in Paragraph 18 that relate to the other defendants in this action, Target lacks information sufficient to form a belief as to such allegations and therefore denies such allegations.

## SECOND CLAIM FOR RELIEF

19.     Target incorporates by reference its response to the allegations of Paragraphs 1-18 of the First Amended Complaint as if fully set forth herein.

20.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies them.

21.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them.

22.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.

23.     Target denies the allegations in Paragraph 23.

24.     Target lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them.

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF TARGET CORP.

la-1132254

Exhibit ___1___ Page __96__

1    [unnumbered par.]      Target denies that Plaintiff has been and continues to be damaged

2    as a direct and proximate result of its alleged inducement of infringement of the '684 patent.  As

3    to the allegations in this paragraph that relate to the other defendants in this action, Target lacks

4    information sufficient to form a belief as to such allegations and therefore denies such allegations.

5    **THIRD CLAIM FOR RELIEF**

6    [unnumbered par.]      Target incorporates by reference its response to the allegations of

7    Paragraphs 1-24 of the First Amended Complaint as if fully set forth herein.

8    25.      Target lacks knowledge or information sufficient to form a belief as to the truth of

9    the allegations in Paragraph 25, and therefore denies them.

10   26.      Target lacks knowledge or information sufficient to form a belief as to the truth of

11   the allegations in Paragraph 26, and therefore denies them.

12   27.      Target lacks knowledge or information sufficient to form a belief as to the truth of

13   the allegations in Paragraph 27, and therefore denies them.

14   28.      Target denies the allegations in Paragraph 28.

15   29.      Target lacks knowledge or information sufficient to form a belief as to the truth of

16   the allegations in Paragraph 29, and therefore denies them.

17   30.      Target denies that Plaintiff has been and continues to be damaged as a direct and

18   proximate result of its contributory infringement of the '684 patent.  As to the allegations in

19   Paragraph 30 that relate to the other defendants in this action, Target lacks information sufficient

20   to form a belief as to such allegations and therefore denies such allegations.

21   **RESPONSE TO PRAYER FOR RELIEF**

22   Target denies that Plaintiff is entitled to any relief in this action and asks the Court to deny

23   any and all of the relief requested by Plaintiff in its First Amended Complaint with respect to

24   Target.

25

26   **ADDITIONAL DEFENSES**

27   Target, without altering the applicable burdens of proof, asserts the following further

28   defenses to the First Amended Complaint and the purported claims contained therein.

4

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF TARGET CORP.

la-1132254

Exhibit___1___ Page___97___

#### First Additional Defense
#### (Failure to State a Claim)

Plaintiff's claims for alleged infringement of the '684 Patent fail to state a claim upon which relief can be granted.

#### Second Additional Defense
#### (Failure to Plead with Particularity)

Plaintiff has failed to plead its induced infringement claim and its contributory infringement claim with sufficient particularity.

#### Third Additional Defense
#### (Non-Infringement)

Target has not infringed, either literally or under the doctrine of equivalents, any claim of the '684 Patent, and it has not contributed to or induced the infringement of any claim of the '684 Patent.

#### Fourth Additional Defense
#### (Invalidity)

Each claim of the '684 Patent is invalid for failure to satisfy the conditions for patentability set forth by 35 U.S.C. §§ 101, 102, 103 and 112.

#### Fifth Additional Defense
#### (Prosecution History Estoppel)

The claims of the '684 Patent cannot be enforced against Target under the doctrine of prosecution history estoppel.

#### Sixth Additional Defense
#### (Equitable Defenses)

On information and belief, Plaintiff's claims against Target are barred, in whole or in part, under the equitable doctrines of laches and unclean hands.

#### Seventh Additional Defense
#### (Non-infringing Alternatives)

Any claim by Plaintiff for damages is limited by the existence of non-infringing alternatives to the '684 Patent.

**Eighth Additional Defense**
**(Misjoinder)**

Plaintiff has misjoined the parties to this action.

**Ninth Additional Defense**
**(Limitation on Recovery of Costs)**

Plaintiff is precluded from seeking recovery of costs by 35 U.S.C. § 288.

**Tenth Additional Defense**
**(Limitation on Damages)**

Plaintiff is precluded from seeking damages by 35 U.S.C. § 287.

**Eleventh Additional Defense**
**(Reservation of Rights)**

Target specifically reserves the right to assert any and all defenses, affirmative or otherwise, that may become available through information developed in discovery or otherwise.

WHEREFORE, Target respectfully demands judgment on Plaintiff's First Amended Complaint as follows:

A.      That Plaintiff takes nothing and is denied any relief whatsoever;

B.      That the First Amended Complaint be dismissed on the merits and with prejudice with respect to Target or any other persons in privity with Target including without limitation any of Target's successors, assigns, agents, suppliers and customers;

C.      That the claims of the '684 Patent be declared to be not infringed by Target;

D.      That the claims of the '684 Patent be declared to be invalid;

E.      That the '684 Patent be declared unenforceable;

F.      That Target be awarded the costs incurred by it in connection with this action;

G.      That this case be deemed exceptional pursuant to 35 U.S.C. § 285, such that Target be awarded its reasonable attorneys' fees; and

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF TARGET CORP.

la-1132254

Exhibit ___1___ Page___99___

H.     That Target be awarded such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Target demands a trial by jury on all issues so triable.

Dated: July 13, 2011

MORRISON & FOERSTER LLP
Charles S. Barquist
Wendy J. Ray


By:  /s/Charles S. Barquist
     CHARLES S. BARQUIST
     CBarquist@mofo.com

     Attorneys for Defendant
     TARGET CORPORATION

la-1132254

CASE NO. 3:11-CV-01114-LAB-BGS
ANSWER OF TARGET CORP.

Exhibit____1____Page 100

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 13, 2011 a true and correct copy of the foregoing was transmitted electronically through the Electronic Filing System of the United States District Court for the Southern District of California which, under Local Civil Rule 5.4(b)&(c), is believed to have sent notice of such filing, constituting service of the filed document, on all Filing Users, all of whom are believed to have consented to electronic service.

Executed on July 13, 2011 at Los Angeles, California.

/s/Charles S. Barquist
Charles S. Barquist

CASE NO. 3:11-CV-01114-LAB-BGS
CERTIFICATE OF SERVICE

la-1132254

Exhibit _____ Page _101_